JAMES NIXON v. THE BUCKEYE COTTON OIL MILL.

(Filed 5 December, 1917.)

1. **Negligence—Evidence—Res Ipsa Loquitur—Trials—Questions for Jury.**

The plaintiff was employed by the defendant oil company, among other things, to relieve its power-driven elevator, consisting of a chain with small cups thereon, enclosed in a box, from becoming chocked by over-feed, the method being to remove the excess by hand through a small opening in the box. There was evidence tending to show that whenever the elevator chocked it would throw the belt operating it from the shaft pulley and stop the elevator, but at the time of the injury it failed to do so, owing to defective condition in the fastening of the pulley to the shaft, and caused the injury, the subject of the action, while the plaintiff was removing the seed in the manner indicated. There was conflicting evidence as to whether the plaintiff was in charge of the shafting and pulley, or only required to replace the belt to start the elevator in motion: *Held,* under the evidence and the doctrine of *res ipsa loquitur* applying thereto, the issue of defendant's actionable negligence was for the determination of the jury, and, having been answered by them in plaintiff's favor, under a proper charge, a cause of action is established.

2. **Evidence—Res Ipsa Loquitur—Defendant's Control.**

The position that the doctrine of *res ipsa loquitur* cannot apply when the servant, who has received a personal injury, is in charge of the defective

machinery which caused it, is inapplicable, when, upon conflicting evidence and proper instructions, the jury has found as a fact that the principal, and not the injured servant, had its supervision and management under its charge.

3. **Negligence—Master and Servant—Evidence—Employer and Employee—Inspection—Trials.**

Where there is evidence tending to show that the plaintiff, an employee, was injured by the unexpected running of a piece of machinery connected by belt to a pulley on defendant's power-driven shaft, which was caused by the pulley not revolving with the shaft because the fastening had become ineffective from service; that plaintiff's foreman inspected the machinery daily, which was so placed that he could have seen the defect: *Held*, sufficient to fix the defendant with notice of the imperfection, and hold him responsible for his negligent failure to have known it.

4. **Instructions—Improper Remarks—Statutes.**

Where the jury has returned for further instructions from the court, which he fairly and impartially gives, his statement to them that they should reconcile the evidence if they could; that they were entitled to their own opinion, which he would not do anything to coerce; that if they could not, the court would "have to do something else," is not an intimation on the merits or whether "any fact has been fully and sufficiently proved," and unobjectionable under the provisions of the Revisal, sec. 536.

CIVIL ACTION to recover damages for physical injuries caused by alleged negligence of defendant company, tried before *Webb, J.,* and a jury, at September Term, 1917, of MECKLENBURG.

On denial of liability, and plea of contributory negligence, the following verdict was rendered:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff, by his own negligence, contribute to his injury? Answer: No.

3. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $1,000.

Judgment on the verdict, and defendant excepted and appealed.

*F. M. Redd and John M. Robinson for plaintiff.*
*Clarkson, Taliaferro & Clarkson for defendant.*

HOKE, J. The evidence on the part of plaintiff tended to show that, in April, 1915, plaintiff was an employee of defendant company, working in the cake and meal room, his duties being "to see after the cake-meal and to keep up the repairs of the belts"; that an elevator, consisting of a continuous chain with little cups attached, enclosed in a box, conveyed the cut cake to this room from a lower floor, the same being driven by band and pulley connected with the main shaft of the operating ma-

chinery; that this elevator was liable to become choked, caused chiefly by being at times overfed by a conveyor which delivered these little cakes on the lower floor, and when it did, it was the custom of plaintiff and other employees to release the elevator by removing this excess by hand and from a small opening in the box; that the pulley driving the elevator band, when in proper shape and fix, was fastened securely to the main shaft, and when the elevator became choked it threw the belt from the elevator pulley, making it always necessary, before the elevator would start again, to replace the belt on the pulley. On the occasion in question, plaintiff being at the time on the stairway, a coemployee called to plaintiff that the elevator was choked, and he hurried down to release it by removing the excess feed, and while so engaged the elevator started and caught plaintiff's hand, inflicting substantial and painful injuries. The plaintiff, a witness in his own behalf, testified, among other things, that he had many years' experience in this work on this and similar machines; that he had released this elevator in the same way 25 or 30 times, and that it had never started of itself in this way before, and that it would not do so when the machinery was in proper condition; that, in such case, the pulley always cast the belt, as stated, making it necessary to replace the same before it could be affected by the motor power. That was the reason for its being choked; it had thrown the belt. In the present instance it had not done so, for the reason that the pulley, being loosened from the main shaft, the set-screw requiring attention, when the elevator became overloaded, the main shaft revolving within the elevator pulley, the latter remained stationary and failed to throw the belt as it had always done; that, some time after, witness had examined this main shaft and discovered indications that had revolved within a loosened pulley, as claimed.

There was conflicting evidence on the part of defendant, but, under a full and fair charge by the court, the jury have accepted plaintiff's version of the occurrence, and, this being true, a cause of action is clearly established. On the facts in evidence, and under the principle of *res ipsa loquitur,* as recognized and applied in numerous decisions of this Court, it was required that the issues be submitted to the jury. *Deaton v. Lumber Co.,* 165 N. C., 560; *Turner v. Power Co.,* 154 N. C., 131; *Morriset v. Cotton Mill,* 151 N. C., 31; *Fitzgerald v. R. R.,* 141 N. C., 530; *Ross v. Cotton Mills,* 140 N. C., 115; *Stewart v. Carpet Co.,* 138 N. C., 60. And, in addition to this, the plaintiff himself gave direct testimony to the effect that the cause of the unusual and unexpected movement of the elevator was that the set-screws, designed to hold the elevator pulley fixed and stationary, had become loosened, permitting the main shaft to revolve within the pulley, thus failing to throw the belt, as it had always done before. It is earnestly insisted for defendant that the doctrine of

*res ipsa loquitur* does not apply, for the reason that the principle is only recognized when all of the agencies which may bring about the unusual and harmful result are under defendant's control, and that here the plaintiff himself was in charge and he should be held responsible.

The position, as a general legal proposition, may be correct, as a rule, but it cannot avail the defendant, on this record, for the reason that it is based on the theory that defendant's evidence is true, whereas the jury, under the charge of the court, rejecting the defendant's version, have, as stated, accepted plaintiff's testimony to the effect that "his business in the room was to see after the cake-meal and keep up the repairs of the belts; that he had nothing at all to do with the pulleys or shafting."

Again, it is insisted, on defendant's motion to nonsuit, that there is no evidence whatever that defendant knew or could have known that the machine was out of order, but we do not so interpret the record. This was no sudden break in the machinery, which might reasonably have been overlooked, but it was a condition requiring time, and which the jury have found the defendant should have discovered. The superintendent himself, testifying for defendant, said that the place was not 10 feet above the floor, and its condition was readily observable; that he was in there 10 or 12 times every day to see that the machinery was running all right. He claimed, and stated, however, "that the whole thing in that room was in charge of plaintiff—machinery and all—and if anything was wrong in pulleys or shaft, he was to fix it, and if it broke down he was to report it"; the plaintiff testifying, as stated, that his duties did not in any way extend to looking after the machinery. In this aspect of the case, the court, among other things, instructed the jury as follows: "Or, if you find from this testimony that the pulley was defective, worn, and in the condition as alleged in the complaint, if you find that the defendant company did not know of that defect and could not have known of that defect by the exercise of ordinary care and prudence, notwithstanding there was a defect about the pulley or about the machinery, as alleged in the complaint, the court charges you, if the company did not know it, and could not have known it by the exercise of ordinary care and prudence, then the company would not be guilty of negligence, and it would be your duty to answer the first issue 'No.' The court charges you, however, gentlemen, that it is the duty the law imposes upon any man who runs machinery to have that machinery inspected at reasonable times to see whether there are any defects about the machinery that would make it dangerous to the employees in charge; and it is the duty of a company working, handling this machinery to have it inspected at reasonable times to see that it is in good condition. . . . If you find from this testimony that this plaintiff, as was contended in the argument, if you find that this plaintiff had control of that machine room; that

he was there, in absolute control of all that machinery, and find that being so, that it was his duty to report any defect to the superintendent, then the court charges you, if there was a defect, that it was his duty to do so, and if he did not, he could not recover."

A breach of legal duty in failing to properly overlook and inspect the machinery is a permissible inference from the facts in evidence. The charge of his Honor here gives to defendant the benefit of every position to which it was justly entitled, and this exception of defendant also must be overruled.

Defendant objects further that there was unwarranted interference with the action of the jury, presented in the record as follows: After deliberating on the case for several hours, the jury returned and the spokesman said they were having difficulty in coming to an agreement, two of them, himself and another, being inclined to hold with defendant by reason of plaintiff's negligence, and being told by the court that it was a matter for them, they would have to decide it among themselves. And after some colloquy, the court said further: "All I can say to you is: if I can give you any additional instructions as to the law, I will be glad to do so, but I tried to instruct you fully about it. I cannot decide anything for you, though. Do not understand me to say anything that would have any tendency to drive you away from any position which you may think correct in the matter. (But if you can reconcile all this testimony and come to a conclusion and answer these issues, it is well you should do so. I do not want to say anything to coerce your decision. A man has a right to have his views about anything. But if you can reconcile the testimony and come to a verdict, I would be glad that if you would do so. Of course, if you cannot, we have to do something else.)"

It is the duty of the judge to counsel a perplexed jury towards an agreement, keeping always within the statutory restriction that he shall give no intimation on the merits or whether "any fact has been fully and sufficiently proved." Revisal, sec. 535. The admonition of his Honor was not so pronounced as that which was upheld in *Warlick v. Plonk*, 103 N. C., 81, and we are unable to see that he has exceeded his privilege or in any way transgressed or failed in the full performance of his duties as an impartial, considerate and capable judge.

There is no error, and the judgment on the verdict must be affirmed.

No error.