STATE OF NORTH CAROLINA v. WILLIAM BAILEY, JR.

No. 128

(Filed 14 January 1972)

1. **Robbery § 5— armed robbery — instructions on firearms**
   Trial judge's instruction in an armed robbery prosecution that "a .22 caliber pistol is a firearm" was not prejudicial.

2. **Robbery § 5— armed robbery — instructions on endangering the life of the victim**
   Trial court's instruction in an armed robbery prosecution, when construed contextually, properly instructed the jury on the legal requirement that the life of the victim must be endangered by the use or threatened use of a firearm or other dangerous weapon, implement, or means.

3. **Criminal Law § 168— review on appeal — construction of the charge**
   A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct.

4. **Criminal Law § 114— instructions — expression of opinion**
   Trial court's instruction in an armed robbery prosecution was not open to the interpretation that the judge expressed an opinion that defendant had confessed his guilt to a police officer, but the court merely detailed what the State's evidence tended to show.

5. **Criminal Law § 168— instructions — review on appeal**
   The charge of the court must be read as a whole.

6. **Criminal Law §§ 122, 168— instructions — jury's request to ask questions of the judge**
   Trial judge's instruction, when he was asked if each member of the jury could have the privilege of asking any questions of clarification, "All right, if they want to do it. The judges always shudder when the jury comes back in and say when they have a question to ask. . . . But anyway if you do have any other questions I will be glad to try to answer any of them.", *held* not prejudicial.

7. **Criminal Law § 122— instructions — contention that instruction was coercive**
   Defendant's contention that the trial court's charge was coercive and compelled unwilling jurors to surrender individual judgments and vote with the majority for a verdict of guilty, *held* without merit, the court's instruction being to the effect that the jury had a duty to reach a verdict "if you can do so without violence to your conscience."

8. **Criminal Law § 122— instructions — contention that instruction was coercive**
   Language of the trial judge in instructing the jury on the gravity and importance of its position, including language that punishment

State v. Bailey

was the concern of the court and that "I have certain information before me as to the background of the defendant's prior record, if any," *held* disapproved by the Supreme Court in this appeal from an armed robbery conviction, but such language did not constitute reversible error.

APPEAL by defendant from *Clark, J.,* 29 March 1971 Session, WAKE Superior Court.

Criminal prosecution on a bill of indictment charging defendant with armed robbery.

The State's evidence tends to show that Loretta Williams had known defendant since 1967 when they worked together at the Sir Walter Hotel. She knew him by the name of "Shorty." She was working at Leonard's One Hour Valet Cleaners on 23 March 1970, the day of the robbery. Defendant, accompanied by another man, came to the cleaners around 3:00 p.m. While threatening Mrs. Williams with a pistol he demanded the money in the cash register. "He had the pistol in his hand pointed right straight out. I was in front of it." Loretta gave him eighty-four dollars in cash and the two men fled.

Defendant was arrested that same evening at the Downtowner Motor Inn when he reported for work about 7:15 p.m. The arresting officers told him he was charged with armed robbery, read the warrant to him, and warned him of his rights as required by *Miranda v. Arizona,* 384 U.S. 436. Defendant said he understood his rights but knew nothing about the armed robbery. He said he had taken three seven-dollar bags of heroin at approximately 4:00 p.m. that afternoon and, as. a result of this information, the officers took him to Wake Memorial Hospital. At the hospital defendant said he wanted to talk to the officers about the robbery. They replied they would talk to him after he had seen a doctor but defendant insisted on talking then and there. He was coherent and appeared to understand and to know exactly what he was doing. He was again fully advised of his rights and again stated that he understood them. He then proceeded to tell the officers that at approximately 3:00 p.m. on 23 March 1970 he and a man named Piccolo went to Leonard's One Hour Valet where he pulled a gun he had borrowed earlier in the day from Harry Martin, Jr., and demanded all of the money in the cash register. After receiving the money he and Piccolo ran east on Martin Street to the corner,

where they were joined by Harry Martin, Jr., and a man named Willis, and then ran down Wilmington Street. The four went to the In Crowd Club, where the money was split four ways, and then to a location in Southside where they played cards and the gun was returned to its owner. Defendant told the officers the weapon was a small .22 caliber blue steel pistol with white handles. In the opinion of Officer Carroll defendant was normal and was not under the influence of alcohol or drugs.

The following morning Officer Carroll went to Harry Martin's residence with a warrant for his arrest. The warrant was served and on the nightstand directly beside Martin's bed was a pistol, "a white handled revolver, short barrel, matching the description of the gun used in the robbery. It was a blue steel pistol with white handles. I took it into my possession."

Defendant did not testify himself. He offered Johnny Christmas, Allen Willis, and Dorothy Sims as witnesses in his behalf. The testimony of these witnesses tends to show that defendant spent the forenoon of 23 March 1970 "shooting heroin"; that defendant was addicted to heroin at that time and "administered about seven or eight bags a day." Johnny Christmas admitted on cross-examination that he was serving thirteen to fifteen years for robbery and had previously been addicted to heroin himself. Allen Willis stated that he had been convicted twice for robbery and was then serving time.

Defendant was convicted of armed robbery and sentenced to a term of not less than fifteen nor more than twenty-five years in the penitentiary. His appeal to the Court of Appeals was transferred to the Supreme Court for initial appellate review pursuant to our general referral order dated 31 July 1970.

*James R. Rogers, III, Attorney for defendant appellant.*

*Robert Morgan, Attorney General, and Edwin M. Speas, Jr., Staff Attorney, for the State of North Carolina.*

HUSKINS, Justice.

[1] The trial judge instructed the jury that "a .22 caliber pistol is a firearm." Defendant contends the court thus told the jury, in effect, that defendant used a firearm in the commission of the robbery, thereby relieving the State of the burden of

proving an essential element of armed robbery. This is defendant's first assignment of error.

There is no merit in this assignment. The instruction merely informed the jury that a .22 caliber pistol is, in fact, a firearm and should the jury find that defendant used a .22 caliber pistol on the occasion in question then such a weapon would be a firearm within the meaning of that term as used in G.S. 14-87, the statute defining and condemning armed robbery.

[2]   The court charged the jury that "it is incumbent upon you to find as one of the necessary elements of the offense charged, that is robbery with a firearm, that the defendant had a firearm in his possession at the time that he obtained the property." Defendant contends the quoted instruction enabled the jury to convict the defendant of armed robbery upon a mere finding that he had a firearm in his possession at the time of the robbery and overlooked the legal requirement that the life of the victim must be endangered by the use or threatened use of a firearm or other dangerous weapon, implement or means. This constitutes defendant's second assignment of error.

[3]   There is no merit in this assignment. Elsewhere in the charge the court had fully instructed the jury with respect to all the elements of armed robbery, including the instruction "that the defendant had a firearm in his possession at the time he obtained the property; and . . . that the defendant obtained the property by endangering or threatening the life of Loretta Williams with a firearm." We have said many times that a charge must be construed contextually, "and isolated portions of it will not be held prejudicial when the charge as a whole is correct." *State v. McWilliams,* 277 N.C. 680, 178 S.E. 2d 476 (1971). Here, the court is merely emphasizing that possession of a firearm (or other dangerous weapon, implement or means) is one of the essential elements of armed robbery. This statement in nowise negatives other portions of the charge to the effect that the life of a person must be endangered or threatened by the use of such weapon. This assignment merits no further discussion.

[4]   In the course of his charge to the jury the trial judge said: "I believe . . . the State's evidence further tends to show that the defendant after being warned of his rights made an admission or confession to Detective J. S. Carroll . . . of the

Raleigh City Police and told him that he had a gun; that is to wit: a .22 caliber pistol with a blue steel barrel and white handles." Defendant contends that after hearing J. S. Carroll's testimony it was a question for the jury as to whether defendant made any statement to that witness. Defendant argues that the court in effect told the jury that defendant had admitted his guilt "or at least some part of it," thus expressing an opinion in violation of G.S. 1-180. This is defendant's third assignment of error.

[5] There is no merit in this assignment. The court was merely detailing what the State's evidence "tended to show." In no sense can it be characterized as an expression of opinion that defendant had confessed his guilt. Elsewhere in the charge the jury was instructed that "as finders of the fact, it is your duty to remember the evidence and if your recollection of what the evidence was . . . differs from [what] the court anywhere in its charge has or does recall the evidence to be, then you are to use your recollection of what the evidence was. Now, Members of the Jury, you are the sole judges of the credit to be given to the witnesses who testified in this case. You may believe all, or any part, or none of what a witness has said on the stand." Thus it was still left for the jury to determine the credibility of Officer Carroll's testimony. The charge of the court must be read as a whole. *State v. Wilson,* 176 N.C. 751, 97 S.E. 496 (1918). A disconnected portion may not be detached from the context of the charge and then critically examined for an interpretation from which erroneous expressions may be inferred. *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969); *State v. McWilliams, supra; State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971).

[6] After retiring to deliberate, the jury returned to the courtroom and the foreman propounded four separate questions which the court answered in clarification of instructions previously given. The foreman then said: "Your Honor, I would like each one of the jurors to have a privilege for asking any question of clarification, if that is in order but I would like for them to do that." The court replied: "All right, if they want to do it. The judges always shudder when the jury comes back in and say when they have a question to ask. Of course, everything we say is taken down and recorded. . . . But anyway if you do have any other questions I will be glad to try to answer any

of them." The foreman said, "Thank you, your Honor," and the jury retired for further deliberations. Defendant contends the court's comment stifled further inquiry by the jurors and argues that the court in effect refused to answer any more questions. Defendant assigns the comment of the court as prejudicial error but fails to specify wherein he was prejudiced. No authority is cited.

It suffices to say that defendant's bare assertion of prejudice is not self-sustaining. It is a specious argument with no visible means of support. The unwisdom of permitting unlimited questions from the entire jury panel is a matter of common knowledge among trial judges. Judicial prudence tends to discourage the practice. Here, a wise judge cautiously planted the seeds of discouragement and then courageously agreed to try to answer any other questions the jurors desired to ask. We perceive no prejudice to defendant. This assignment is overruled.

[7] The following instruction by the court constitutes defendant's fifth assignment of error: "Now, I would say this further, Members of the Jury, that you deliberated for some time yesterday afternoon, did not arrive at a verdict. Now I instruct you that it is your duty as jurors to agree and arrive at a verdict if you can do so without violence [to] your conscience. I hasten to add that neither the court nor anyone else can force you to agree but as I say it is your duty to agree if you can do so without violence to your conscience. If you do not agree, it would simply mean that this case would have to be recalendared for trial at some future date and, of course, we would like to avoid that if we can in view of the number of criminal cases that we have calendared for trial here." Defendant contends the quoted statement from the charge was coercive and compelled unwilling jurors to surrender individual judgments and vote with the majority for a verdict of guilty. In such fashion, defendant argues, the court intimated what the verdict should be.

Instructions of similar import have been upheld in many cases, including *State v. Lefevers,* 216 N.C. 494, 5 S.E. 2d 552 (1939) ; *State v. Pugh,* 183 N.C. 800, 111 S.E. 849 (1922) ; *State v. Brodie,* 190 N.C. 554, 130 S.E. 205 (1925) ; *In re Will of Hall,* 252 N.C. 70, 113 S.E. 2d 1 (1960). "It is the duty of the judge to counsel a perplexed jury towards an agreement, keeping always within the statutory restriction that he shall give no intimation on the merits or whether 'any fact has been fully and

sufficiently proved.' " *Nixon v. Oil Mill,* 174 N.C. 730, 94 S.E. 410 (1917). Here, the instruction was to the effect that the jury had a duty to reach a verdict "if you can do so without violence to your conscience." This language negates coercion and its use was specifically upheld in *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967). Accord, *State v. McKissick,* 268 N.C. 411, 150 S.E. 2d 767 (1966); *State v. Roberts,* 270 N.C. 449, 154 S.E. 2d 536 (1967). We find nothing in this instruction that tends to coerce, and we are unable to see any expression of opinion as to what the verdict should be. This assignment is not sustained.

[8] Defendant's sixth and seventh assignments of error attack the following portion of the charge:

"I would say to you, Members of the Jury, that you have been summoned to perform one of the highest duties of citizenship, that is of jury service. On Monday when you came in you were sworn, took an oath that you would act fairly and impartially. I have instructed you that your duty is to find the truth, find the facts based on the evidence as it came from the witness stand and based on the law as given to you by the court. I have told you that you are not to be influenced by sympathy on the one hand or prejudice on the other. Your duty is to find the facts. You are not to be influenced by punishment in arriving at your verdict, that is a matter for the court and I have certain information before me as to the background of the defendant's prior record, if any, and other things that the court takes into consideration in imposing punishment. I would further say to you that our, the purpose of our criminal laws is not punishment. When we talk about criminal law, we are talking about rights. You have the right, for example, to walk down the street without having somebody come up and hit you in the mouth. So we have a law against assault. You have the right to get out, out on the highways and drive an automobile without some drunk running into you and injuring you and tearing up your car. So we have a law against that sort of thing, driving under the influence. You have a right to operate a business without being subjected to your goods, your money, being stolen. So you have a law against larceny. So we are not talking—the primary purpose of the criminal laws is not punishment but to protect

the rights of society, you and I and everyone else. So I simply ask you to perform the duty as the court has instructed you to do and as you take an oath to do. In arriving at your verdict, you should not be guided or influenced by your social or economic philosophy. Simply base your verdict on the evidence as it came from the witnesses and the law as given you by the court. So I again instruct you, Members of the Jury, to retire and to arrive at a verdict if you can do so without violence to your conscience."

Defendant contends the quoted instruction tells the jury defendant has a prior record, thus putting his character in evidence, and expresses an opinion that the jury should return a verdict of guilty.

It must be conceded that the quoted portion of the charge represents an unfortunate choice of words to express several unnecessary observations. It does not put defendant's character in evidence, as contended, but it does border on a violation of G.S. 1-180. The able and patient trial judge obviously sought to remind the jury of the gravity and importance of its position and the duty imposed on it by law. He sought to emphasize that punishment was not a proper concern for the jury but a matter for the court who, when imposing sentence in *any* criminal case, takes into consideration a defendant's prior record, if any, and other matters relating to his background—information not available to the jury. He told the jury that our criminal laws are primarily designed to protect the rights of society rather than to punish offenders. Certainly it is not error for the trial judge, when circumstances require it, to instruct the jury with respect to any of these matters if the instructions are properly expressed. But the language used here is a poor choice for the purpose and is expressly disapproved. Ordinarily, it would require a new trial. However, not every ill-advised or poorly expressed instruction by the trial judge is of such harmful effect as to constitute reversible error. The objectionable language must be considered in light of all the facts and circumstances, "and unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." *State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950) ; *State v. Hoover,* 252 N.C. 133, 113 S.E. 2d 281 (1960).

The facts and attendant circumstances in this case reveal that defendant was first tried for this offense at the 29 May 1970 Regular Criminal Session of Wake Superior Court and convicted of armed robbery by the jury. We awarded a new trial for failure of the trial judge to submit common law robbery as a permissible verdict. *State v. Bailey,* 278 N.C. 80, 178 S.E. 2d 809 (1971). Defendant was retried before another jury and again convicted of armed robbery. At each trial he was positively identified by the victim who had known him since 1967 when they worked together at the Sir Walter Hotel. He was identified at each trial by Guy Gray, a presser at Leonard's One Hour Valet and an eyewitness to the robbery. He confessed to Officer Carroll and the competency of that confession has been established. In this setting it is apparent that the ill-chosen words of the judge here under attack had no prejudicial effect on the result of the trial and must therefore be considered harmless. Often in the course of a trial it becomes necessary for the judge to further instruct the jury, and such instructions taken separately *might* seem to be an expression of opinion; "but it must be presumed that their true import and bearing are understood by the jury, and unless it appears with ordinary certainty that the rights of the prisoner have been in some way prejudiced by the remarks or conduct of the court, it cannot be treated as error." *State v. Browning,* 78 N.C. 555 (1877). There is no reason to believe that yet another trial would produce a different result.

Analogous cases involve the admission of incompetent evidence which had no effect on the result of the trial. We have consistently held that the admission of evidence, even though technically incompetent, will be treated as harmless unless it is made to appear that defendant was prejudiced thereby and that a different result likely would have ensued had the evidence been excluded. *State v. Bennett,* 237 N.C. 749, 76 S.E. 2d 42 (1953); *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916 (1955); *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661 (1965); *State v. Temple,* 269 N.C. 57, 152 S.E. 2d 206 (1967); *Gasque v. State,* 271 N.C. 323, 156 S.E. 2d 740 (1967); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969); *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512 (1970); *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971). Defendant's sixth and seventh assignments of error are overruled.

Defendant having failed to show prejudicial error, the verdict and judgment will be upheld.

No error.