STATE OF NORTH CAROLINA v. KELVIN KEITH WELLS

No. 55

(Filed 14 July 1976)

1. **Rules of Civil Procedure § 45; Witnesses § 10— subpoena to obtain testimony of witness — method of issuance**

   A subpoena for the purpose of obtaining the testimony of a witness in a pending cause, criminal or civil, must be issued by the clerk of superior court for the county in which the trial is to be held at the request of any party. In fact, such subpoena may be issued (1) by the clerk, (2) by any judge of the superior court, judge of the district court, or magistrate, or (3) by the party or his attorney. G.S. 8-59; G.S. 1A-1, Rule 45.

2. **Constitutional Law § 31— absent witnesses — failure of court to issue instanter subpoena — no error**

   Defendant's rights under the Sixth and Fourteenth Amendments to the U. S. Constitution were not abridged by the trial court's failure to issue an instanter subpoena for two of defendant's alibi witnesses, since defendant made no attempt to place the witnesses under subpoena, one of the witnesses had already been examined and cross-examined, the record did not show what additional favorable testimony defendant sought to elicit from him or what testimony the other witness would have given, and the record did not show why these witnesses were absent after the first day of the trial.

3. **Criminal Law § 112— reasonable doubt — necessity for instruction absent request**

   Absent request, the trial court is not required to define reasonable doubt, but if it undertakes to do so, the definition must be substantially correct.

4. **Criminal Law § 112— reasonable doubt — definition proper**

   The trial court's definition of reasonable doubt as "a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or the lack or insufficiency of the evidence, as the case may be" was in accord with definitions approved by the Supreme Court.

5. **Burglary and Unlawful Breakings § 6— intent to commit rape — definition of rape proper**

   The trial court's definition of rape as "forcible sexual intercourse with a woman against her will" was proper.

6. **Burglary and Unlawful Breakings § 6— intent to commit rape — failure to instruct on lesser included offenses of rape — no error**

   Where defendant was charged with burglary in the first degree — breaking and entering during the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein, *i.e.,* the felony of rape, it was not error for the trial court to fail to delineate

State v. Wells

the difference between rape, assault with intent to commit rape, and simple assault.

**7. Burglary and Unlawful Breakings § 1— intent to commit felony — burglary complete though intent abandoned**

The crime of burglary is completed by the breaking and entering of the occupied dwelling of another in the nighttime, with the requisite ulterior intent to commit the designated felony therein, even though, after entering the house, the accused abandons his intent through fear or because he is resisted.

**8. Burglary and Unlawful Breakings § 6— raising window — jury instruction on breaking proper**

In a prosecution for first degree burglary where the evidence disclosed that one window in the prosecuting witness's apartment, although closed, had a broken lock and that, after the burglary, marks were found on the frame of that window at a point where some instrument would necessarily be used to open it, the trial court properly and correctly charged that the moving and raising of the window would be a breaking within the meaning of the law.

**9. Burglary and Unlawful Breakings § 6— jury instruction on entry — no error**

In a prosecution for first degree burglary the trial court's statement that, as a matter of law, walking into and entering the bedroom of the prosecuting witness would be an entry into her sleeping apartment was not an expression of opinion.

**10. Burglary and Unlawful Breakings § 6— "sleeping apartment" — expression of opinion by court — no prejudicial error**

Though the trial court in a first degree burglary prosecution expressed an opinion on the evidence by stating that the prosecuting witness's apartment was a "sleeping apartment," such error was harmless, since no issue was raised as to whether the apartment in question was a "sleeping apartment," and defendant himself told the jury, in effect, that the prosecuting witness's apartment was a "sleeping apartment."

**11. Criminal Law § 168— jury instructions — inadvertence corrected — no prejudicial error**

Where an inadvertence complained of occurs early in the trial court's charge but is not called to the attention of the court at the time, and is later corrected, the occurrence will not be held for prejudicial error when it is apparent from the record that the jury could not have been misled.

**12. Criminal Law § 118— contentions arising from evidence or lack of it — instructions proper**

The trial court's instruction that the jury should consider all contentions of defendant and the State and any other legitimate contentions arising out of the evidence or lack of evidence whether they had been called to the jury's attention or not was proper.

Justice EXUM dissenting.

DEFENDANT appeals from judgment of *Seay, J.*, 1 December 1975 Session, FORSYTH Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging first degree burglary. It is alleged in the bill that on 25 March 1975, about the hour of twelve in the night-time of the same day, with force and arms, defendant did unlawfully, feloniously, and burglariously break and enter the dwelling apartment of Annie Mae Walker, located at 2655 Pendleton Drive, Apartment # 1, Winston-Salem, North Carolina, with the felonious intent to commit the crime of rape upon the said Annie Mae Walker, she being a female person actually occupying the dwelling apartment at the time.

Annie Mae Walker, the prosecuting witness, testified that on 25 March 1975 she lived in Apartment # 1 at 2655 Pendleton Drive in Winston-Salem. The apartment has a front and back door and six windows. Before retiring for the night she locked the doors and checked the windows to see if they were locked. All windows were closed but the lock on one window in the back bedroom was broken and could not be locked. As was her custom, she left a light burning in the bathroom. There was a street light about five feet outside her bedroom window and she could see anyone in her bedroom even though all the other lights in the apartment were turned off.

She was awakened about 4:45 a.m. on the night in question by a black male lying on top of her kissing her on the neck. She looked up and asked him how he got into her house. He did not answer and she started screaming. He put his hand over her mouth and told her to shut up, that all he wanted was some sex. She told him that her boyfriend would kill him, whereupon he got up, walked around the bed, turned back and looked at her and repeated, "All I wanted was some sex," and left by the back door. Her assailant was wearing only shorts and a black T-shirt. He was barefooted. He observed his face and features and heard his voice.

Mrs. Walker further testified that she immediately went upstairs to a friend's apartment and called the police. When officers arrived she told them what had happened and described her assailant as short and dark skinned with a medium-sized Afro and a beard. She told Detective Lawson she would recognize the boy if she ever saw him again.

About two days later Annie Mae Walker spotted defendant standing in a group of boys outside her apartment. At the time he was clad in a blue shirt and was wearing sunglasses. She called Detective Lawson the next day and told him she had seen her assailant and had learned his name was Calvin Wells. On 3 April 1975 she swore out a warrant for defendant's arrest and he was arrested about 9:15 a.m. the following day. She identified defendant in court and stated that she had no doubt whatsoever that "that is the man who entered my apartment on the 25th of March 1975, and that I discovered on top of me— that is him."

Officer K. H. Blevins with the Winston-Salem Police Department testified that on 25 March 1975 at approximately 5 a.m. he received a call to go to 2655 Pendleton Drive. On arrival he talked with Annie Mae Walker and she related what had occurred. He observed the back window with the broken lock and called an identification officer to the scene to check for fingerprints. Officer Shaw made the fingerprint check and found none. Inspection of the window with the broken lock, however, did reveal marks on the frame in a position where some instrument would have to be used to open the window.

Detective Lawson testified that he talked with Mrs. Walker about 8 a.m. on the morning of 25 March 1975. She told him the doors and windows were closed; that she was awakened about 5 a.m. by a black male lying on top of her; that she started screaming and he said, "Shut up, all I want is some sex"; that she continued to scream and he got up and went out the back door; that her assailant was a black male, about twenty-five years old, with a medium beard, medium Afro, dark complexion, and wearing a black T-shirt and checked shorts.

Defendant's evidence tends to establish alibi. Defendant took the stand and denied any involvement in the crime. He testified that he was staying in Apartment 5 at 2655 Pendleton Drive on the date in question but did not know at that time that Annie Mae Walker lived in the same apartment building just two doors away. He said he had met her "a long time ago" in the downtown mall when her husband, who was with her, introduced him. He admitted that on March 25 he knew she lived in the vicinity of his apartment.

State v. Wells

Defendant further testified that on the morning of March 25 he was at Willie Mackie's house playing cards from midnight until dawn the next morning. He swore that on the day of his arrest he was not wearing checked shorts and a black T-shirt but was wearing pants and no shirt at all. He emphatically denied the charges against him and testified that he had never been in Mrs. Walker's apartment—on March 25 or any other date.

Willie Mackie, a defense witness, corroborated defendant's testimony. He stated that defendant was playing cards at Mackie's home the entire time from about 9:30 to 10:00 p.m. on March 24 until after daylight on March 25. Mackie also testified that among those present in addition to defendant were Otis Mack and Davida Duncan.

Defendant's mother testified that defendant lives with her and she tends to his laundry and clothing; that to the best of her knowledge defendant does not own any checked shorts and black T-shirt and in fact never wears a T-shirt of any kind.

Elsie Williams testified that she lives in Apartment 3 at 2655 Pendleton Drive, directly above Annie Mae Walker's apartment; that she is normally able to hear noises or disturbances about the building, including the sound of voices in the apartment below hers; that on the night in question she did not hear or see anything unusual and did not hear any screaming in the apartment of the prosecuting witness.

Officer Lawson, testifying for the State in rebuttal, reaffirmed his testimony to the effect that, when arrested, defendant was wearing a black T-shirt and checked shorts and "was attempting to put on a pair of pants." Following his arrest, defendant wanted to put on some other clothes and was permitted to do so.

The trial judge submitted as permissible verdicts (1) guilty of burglary in the first degree, or (2) guilty of felonious breaking or entering, or (3) guilty of non-felonious breaking or entering, or (4) not guilty. The jury convicted defendant of burglary in the first degree and he was sentenced to life imprisonment. He appealed to the Supreme Court assigning numerous errors.

*White and Crumpler by Fred G. Crumpler, Jr. and Melvin F. Wright, Jr., attorneys for defendant appellant.*

*Rufus L. Edmisten, Attorney General; William H. Boone, Associate Attorney; and Myron C. Banks, Special Deputy Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Upon the call of this case defendant and his witnesses were present and ready for trial. The prosecuting witness had not been notified the case was calendared for trial that day and was not in court. The trial court issued an instanter subpoena to require her presence. She was brought into court and the trial proceeded. At the end of the first day of the trial, defense witness Willie Lee Mackie was on the witness stand and had been examined and cross-examined. The court recessed for the day, and when it reconvened at 9:30 a.m. the following morning, Mackie was not present. Defendant was ordered to proceed with his other witnesses. He examined two witnesses and then, after a 38-minute recess to wait for Mackie and Davida Duncan to arrive, the State recalled Officer Lawson in rebuttal and examined him. Defendant himself then took the stand and offered rebuttal evidence. Willie Lee Mackie never returned to court and was unavailable for further questions on redirect examination. Davida Duncan never returned. Neither of these witnesses was under subpoena and neither had been excused. Failure of the court to issue an instanter subpoena for these witnesses or to declare a mistrial is the basis for defendant's first assignment of error. He contends he has been denied his Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor." He further contends that he was denied equal protection of the laws when the court issued an instanter subpoena for the prosecuting witness but refused to exercise the same power on behalf of the defendant.

The right of an accused to reasonable notice of a charge against him and an opportunity to be heard in his defense are basic rights and include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel. *In re Oliver*, 333 U.S. 257, 92 L.Ed. 682, 68 S.Ct. 499 (1948). The right of an accused to offer the testimony of witnesses and to compel their attendance by compulsory process, if necessary, is a basic ingredient of the right to present a de-

fense, *i.e.*, the right to present the defendant's version of the facts, as opposed to the prosecution's, so the jury may decide where the truth lies. "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 18 L.Ed. 2d 1019, 87 S.Ct. 1920 (1967). Since defendant's right to compulsory process to compel the attendance of witnesses is not debatable, the question remains whether such right was violated under the circumstances of this case.

[1] The record before us reflects that defendant's two alibi witnesses, Willie Lee Mackie and Davida Duncan, were present in court on 3 December 1975—the first day of the trial. Although both were important witnesses, neither had been subpoenaed. A subpoena for the purpose of obtaining the testimony of a witness in a pending cause, criminal or civil, *must* be issued by the clerk of superior court for the county in which the trial is to be held at the request of any party. In fact, such subpoena may be issued (1) by the clerk, (2) by any judge of the superior court, judge of the district court, or magistrate, or (3) *by the party or his attorney.* G.S. 8-59; G.S. 1A-1, Rule 45, Rules of Civil Procedure. Every witness under subpoena in a criminal prosecution must continue to attend from day to day and from session to session until discharged by the court, the prosecuting officer, or the party at whose instance he was summoned, and in default thereof shall forfeit and pay $80.00 for the use of the State or the party summoning him. G.S. 8-63. When witnesses are not under subpoena, no penalty is prescribed for failure to attend; and their absence places no obligation upon the trial judge to subpoena them.

[2] We said in *State v. Graves*, 251 N.C. 550, 112 S.E. 2d 85 (1960) : "We do not suggest that an accused may be less than diligent in his own behalf in preparing for trial. He may not place the burden on the officers of the law and the court to see that he procures the attendance of witnesses and makes preparation for his defense. But the officers and the court have a duty to see that he has *opportunity* for so doing." (Emphasis added.) Here, defendant's lack of diligence in placing his witnesses under subpoena when he had ample opportunity to do so, thus requiring their attendance from day to day, forestalls his belated attempt to place responsibility on the trial judge for their

absence. Willie Lee Mackie had been examined and cross-examined already. What additional favorable testimony defendant sought to elicit from him is not shown. Nor does the record reflect what evidence Davida Duncan would have given. Moreover, the record is silent as to why these witnesses were absent on the second day of the trial. It could be that no one told them to return. Viewing the circumstances in their totality, we hold that defendant's rights under the Sixth and Fourteenth Amendments were neither denied nor abridged by the actions of the trial court. Defendant's first assignment of error is overruled.

[4] Defendant's second assignment of error is based on the trial court's definition of reasonable doubt. He defined it as follows:

"A reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or the lack or insufficiency of the evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt."

[3] Absent request, the trial court is not required to define reasonable doubt, but if it undertakes to do so, the definition must be substantially correct. *State v. Shepherd,* 288 N.C. 346, 218 S.E. 2d 176 (1975).

[4] We think the court's definition of reasonable doubt is substantially correct and accords with the more elaborate definitions approved by this Court in many cases. *See State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60 (1975); *State v. Flippin,* 280 N.C. 682, 186 S.E. 2d 917 (1972); *State v. Gaiten,* 277 N.C. 236, 176 S.E. 2d 778 (1970); *State v. Britt,* 270 N.C. 416, 154 S.E. 2d 519 (1967); *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133 (1954); *State v. Steele,* 190 N.C. 506, 130 S.E. 308 (1925); *State v. Schoolfield,* 184 N.C. 721, 114 S.E. 466 (1922). When the various definitions of reasonable doubt, approved in numerous decisions, are distilled and analyzed, the true meaning of the term is adequately expressed in the brief definition here assigned as error. Brevity makes for clarity and we think the jury fully understood the meaning of reasonable doubt as that term is employed in the administration of the criminal laws. Defendant's second assignment is overruled.

State v. Wells

Defendant contends the trial court erred in its definition of rape and in failing to explain the difference between rape, assault with intent to commit rape and simple assault. This constitutes defendant's third assignment of error.

[5] The court defined rape as "forcible sexual intercourse with a woman against her will." We find no fault with this definition. In *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969), we said: "Rape is the carnal knowledge of a female person by force and against her will." The challenged definition is synonymous with this one. The meaning is the same.

[6] Moreover, the trial judge was not required to delineate the difference between rape, assault with intent to commit rape, and simple assault. Defendant was not charged with rape. Rather, he was charged with burglary in the first degree— breaking and entering during the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein, *i.e.,* the felony of rape. Felonious intent is an essential element of the burglary which the State must allege and prove, "and the felonious intent proven, must be felonious intent alleged. . . . " *State v. Jones,* 264 N.C. 134, 141 S.E. 2d 27 (1965). In an indictment for burglary it is not enough "to charge generally an intent to commit 'a felony' in the dwelling house of another. The particular felony which it is alleged the accused intended to commit must be specified. . . . The felony intended, however, need not be set out as fully and specifically as would be required in an indictment for the actual commission of said felony, where the State is relying only upon the charge of burglary. It is ordinarily sufficient to state the intended offense generally, as by alleging an intent . . . to commit therein the crime of larceny, rape, or arson. [Citations omitted.]" *State v. Allen,* 186 N.C. 302, 119 S.E. 504 (1923).

[7] So it is here. The indictment having specified defendant's ulterior intent, *i.e.,* the intent to commit rape, the State was required to prove that intent at the time of the breaking and entering in order to make out the offense of burglary. Hence, with respect to the burglary, there was no necessity to charge on unrelated matters such as assault with intent to commit rape or simple assault. Even though they are lesser included offenses of the crime of rape, they are not lesser included offenses of the burglary alleged in the bill of indictment. The actual commission of the intended felony (rape) is not essential to the crime

of burglary. *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974). The crime of burglary is completed by the breaking and entering of the occupied dwelling of another, in the nighttime, with the requisite ulterior intent to commit the designated felony therein, even though, after entering the house, the accused abandons his intent through fear or because he is resisted. *State v. Allen, supra; State v. McDaniel,* 60 N.C. 245 (1864) ; *accord, State v. Thorpe,* 274 N.C. 457, 164 S.E. 2d 171 (1968). Here, these principles were included in the trial judge's charge, to wit: " . . . that at the time of the breaking and entering, the defendant Kelvin Wells, intended to commit the felony of rape, that is to have forcible sexual intercourse with Annie Walker against her will."

In our view the charge of the court correctly defined the offense of rape and properly applied the law relevant thereto with respect to the burglary charged in the bill of indictment. "Whether the ulterior criminal intent existed in the mind of the person accused, at the time of the alleged criminal act, must of necessity be inferred and found from other facts, which in their nature are the subject of specific proof. It must ordinarily be left to the jury to determine, from all the facts and circumstances, whether or not the ulterior criminal intent existed at the time of the breaking and entry. In some cases the inference will be irresistible, while in others it may be a matter of great difficulty to determine whether or not the accused committed the act charged with the requisite criminal purpose." *State v. Allen, supra.* So, here, the evidence is sufficient to support, but not require, the permissible inference that defendant intended to commit rape *at the time he broke and entered* Annie Mae Walker's sleeping quarters. It was for the jury to determine, under all the circumstances, his ulterior criminal intent. *State v. Bell, supra.* Defendant's third assignment of error is overruled.

Defendant's fourth assignment of error is grounded on the contention that the trial court violated G.S. 1-180 in charging on the elements of burglary. The following portion of the charge is challenged by this assignment:

"I charge that for you to find the defendant, Kelvin Wells, guilty of burglary in the first degree as charged in

State v. Wells

the bill of indictment, the State . . . must prove these seven things . . . beyond a reasonable doubt:

First, that on the occasion herein . . . there was a breaking by the defendant, Kelvin Wells. [Members of the jury, the raising of a window, that is the moving of the window, the raising of it, the window being into the apartment house of Annie Walker, would be a breaking.]
EXCEPTION NO. 4

[Second, the State must prove that the defendant . . . entered the sleeping apartment of Annie Walker, walking around into the bedroom and entering into the bedroom of Annie Walker would be an entry into her sleeping apartment.]
EXCEPTION NO. 5

[Third, that the building . . . that was broken into and entered, was a sleeping apartment, that is a place where somebody regularly sleeps. Members of the jury, the apartment described for you herein located at 2655 Pendleton Drive, Apartment number one, is a sleeping apartment.]
EXCEPTION NO. 6

[Fourth, the State must prove that the tenant in Apartment number one, Annie Walker, did not consent to the breaking and entering.]
EXCEPTION NO. 7

Fifth, that it was in the nighttime when the breaking and entering was done.

[Sixth, that at the time of the breaking and entering the defendant Kelvin Wells intended to commit the felony of rape, that is to have forcible sexual intercourse with Annie Walker against her will.]
EXCEPTION NO. 8

And, seventh, that Annie Walker was in the apartment, the sleeping apartment, at the time of the breaking and entering."

The bracketed portions of the charge represented by Exceptions 4, 5, 6, 7 and 8 constitute defendant's fourth assignment of error.

Defendant concedes in his brief that "the trial court correctly informed the jury that proof of all . . . elements of burglary must be established beyond a reasonable doubt." He argues, however, that "throughout the discussion of the crime of burglary and the elements that comprise and are essential to this crime, the trial court made numerous references to material facts which constituted his opinion" in violation of the proscription that "no judge in giving a charge to the jury or at any time during the trial, shall intimate whether a fact is fully or sufficiently proved." *State v. Mitchell,* 193 N.C. 796, 138 S.E. 166 (1927).

For the reasons which follow, we find no merit in this assignment.

The constituent elements of burglary in the first degree are: (1) The breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein. *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972).

**[8]** Exception No. 4 is addressed to the portion of the charge on "breaking." The evidence discloses that one window in Annie Mae Walker's apartment, although closed, had a broken lock and that, after the burglary, marks were found on the frame of that window at a point where some instrument would necessarily be used to open it. In that factual setting the trial court properly and correctly charged that the moving and raising of the window would be a breaking within the meaning of the law. *See State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974). There is no merit in Exception No. 4.

**[9]** Exception No. 5 challenges the portion of the charge dealing with "entering." Here, the trial judge merely explained the legal principles involved by saying that, as a matter of law, walking into and entering the bedroom of Annie Walker would be an entry into her sleeping apartment. *See State v. Henderson, supra.* The statement is not a matter of opinion but a matter of law. There is no merit in Exception No. 5.

**[10]** Defendant contends the trial court, rather than the jury, decided the question whether the apartment of Annie Mae Walker was a "sleeping apartment." By Exception No. 6 defendant challenges the court's instruction that "the apartment described

State v. Wells

for you herein located at 2655 Pendleton Drive, Apartment number one, is a sleeping apartment." Defendant contends this language amounted to a prejudicial expression of opinion requiring a new trial. He relies on *State v. Cuthrell,* 235 N.C. 173, 69 S.E. 2d 233 (1952), which holds that the trial court in charging a jury "may not give an instruction which assumes as true the existence or nonexistence of any material fact in issue."

The judge's affirmative statement that "the apartment described for you herein located at 2655 Pendleton Drive, Apartment number one, is a sleeping apartment," is a violation of G.S. 1-180, but we consider it entirely harmless in the factual context of this case. *See State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950) ; *accord, State v. Holden,* 280 N.C. 426, 185 S.E. 2d 889 (1972) ; *State v. Bailey,* 280 N.C. 264, 185 S.E. 2d 683 (1972) ; *State v. Hoover,* 252 N.C. 133, 113 S.E. 2d 281 (1960). *Compare State v. Cuthrell, supra.* Here, except by the plea of not guilty, no issue was raised as to whether the apartment in question was a "sleeping apartment." This fact distinguishes this case from *State v. Cuthrell, supra.* All the State's evidence tends to show that Annie Mae Walker lived and slept there. Thus it was, in fact, a "sleeping apartment." *State v. Foster,* 129 N.C. 704, 40 S.E. 209 (1901). Defendant himself testified that he knew where Annie Mae Walker lived—"it's two apartments down from the apartment building I live in." On cross-examination he testified: "The Pattons lived in that apartment before she moved in it. . . . I said I lived two apartments below that one. . . . The Pattons lived there before she moved in." The only permissible inference arising on that evidence is that Annie Mae Walker lived in Apartment No. 1 and regularly slept there. Defendant himself told the jury, in effect, that the Walker apartment was a sleeping apartment. He never contended otherwise. His defense was alibi. In this context, the statement challenged by Exception No. 6, while erroneously invading the province of the jury, was not prejudicial. There is no reasonable possibility that the error complained of contributed to defendant's conviction, *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963), or that a different result likely would have ensued had the erroneous language been omitted. *See State v. Perry, supra.* Thus it was harmless beyond a reasonable doubt. There is no merit in Exception No. 6.

The questions raised by Exceptions 7 and 8 are not discussed in defendant's brief. No reason or argument is stated or

authority cited in support of these exceptions. They are therefore deemed abandoned under Rule 28, Rules of Appellate Procedure, 287 N.C. 679 at 741 (Appendix 1975). Defendant's fourth assignment of error is overruled.

Four permissible verdicts were submitted to the jury: (1) Guilty of first degree burglary, or (2) guilty of felonious breaking or entering, or (3) guilty of nonfelonious breaking or entering, or (4) not guilty. After defining and discussing the permissible guilty verdicts, the court summarized in the following language: "So, in this case, you may render one of the following verdicts: You may find the defendant guilty as charged of first degree burglary or you may find him guilty of felonious breaking or entering or you may find him not guilty; just as you find the facts to warrant from all the evidence in the case applying thereto the law as given to you by the court." By inadvertence the judge omitted from this summary nonfelonious breaking or entering as one of the permissible verdicts. This constitutes defendant's fifth assignment of error.

[11] The record reveals that in the final mandate to the jury the able trial judge corrected his inadvertence by defining, *for the second time,* the lesser included offense of nonfelonious breaking or entering, and by including it in the possible verdicts that might be returned. Thus the court's earlier inadvertence was rectified and any possible misunderstanding that might have been caused by it was removed. We regard the occurrence as completely lacking in prejudicial effect. Where, as here, the inadvertence complained of occurs early in the charge but is not called to the attention of the court at the time, and is later corrected, the occurrence will not be held for prejudicial error when it is apparent from the record that the jury could not have been misled. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. denied* 386 U.S. 911, 17 L.Ed. 2d 784, 87 S.Ct. 860 (1967). *See State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968); *State v. Withers,* 271 N.C. 364, 156 S.E. 2d 733 (1967). Defendant's fifth assignment of error is overruled.

[12] After summarizing the evidence and stating the contentions of the parties, the court charged the jury as follows:

"Now, I have not given you all of the contentions of the defendant nor of the State. The contentions of counsel are one of the incidents of trial. [Counsel are officers of the court and the law makes it your duty to consider all of

the contentions made by counsel for the defendant and the district attorney for the State and to consider any other legitimate contentions arising out of the evidence *or lack of evidence* whether it has been called to your attention by the court or not.]" (Emphasis added.)    EXCEPTION No. 10

Defendant argues in his brief that it was the duty of the trial court to instruct the jury that it was entitled to consider any other contentions arising out of the evidence, *or lack of evidence,* whether it had been called to the jury's attention or not. To quote the brief: "By failing to instruct on the term 'lack of evidence,' the trial court committed prejudicial error and thereby committed grounds for a new trial."

Since the trial judge charged precisely what defendant contends he should have charged, it seems apparent that counsel has misread the record. In any event, prejudicial error is not shown in the portion of the charge embraced by this assignment. Defendant's sixth assignment is therefore overruled.

A careful review of the entire record reveals that defendant received a fair trial free from prejudicial error. The verdict and judgment must therefore be upheld.

No error.

Justice EXUM dissenting.

Defendant's primary defense was alibi. Indeed, even after verdict and judgment he proclaimed his total innocence. This was a jury question resolved by the jury against defendant under proper instructions.

There was, however, another jury question raised by the evidence upon which the jury was not properly instructed. The majority opinion accurately states the evidence of the prosecutrix. One reasonable interpretation of that evidence is that the intruder intended to persuade the prosecutrix to engage in consensual, albeit illicit, sexual intercourse. The factual basis for this interpretation is that upon the slightest resistance by the prosecutrix the intruder desisted from his attempt saying, "All I wanted was some sex."

The indictment for first degree burglary charged that defendant broke and entered with the intent to commit the crime

of rape. With regard to the *mens rea* of this crime the trial judge charged the jury that it must find that defendant "intended to commit the felony of rape, that is to have forcible sexual intercourse with [prosecutrix] against her will." No further explanation of the nature or quantum of force defendant intended to use was given.

Where the element of the force intended to be used is not really contested this bare bones definition might be enough. On the evidence in this case, however, it is prejudicially insufficient. "General Statute 1-180 requires the trial judge to 'declare and explain the law arising on the evidence . . . . ' How much the law needs to be explained depends on what evidence is presented. *State v. Cole*, 270 N.C. 382, 154 S.E. 2d 506 (1967). Merely to define an element of a criminal offense may be an insufficiency which prejudices the defendant when that element is the very nub of the case. *State v. Lawrence*, 262 N.C. 162, 136 S.E. 2d 595 (1964) ; *State v. Lunsford and Sawyer*, 229 N.C. 229, 49 S.E. 2d 410 (1948). *See also State v. Thomas*, 118 N.C. 1113, 24 S.E. 431 (1896)." *State v. Patterson*, 288 N.C. 553, 575, 220 S.E. 2d 600, 616 (1975) (Exum, J., dissenting).

The very nub of this case is the intent of defendant as he broke and entered. How much force, if any, did he intend to use to obtain sexual intercourse with the prosecutrix? Under the instructions as given the jury might have believed that the force involved in merely kissing and putting a hand over prosecutrix's mouth was the force referred to in the judge's instruction. The jury may have understood that if defendant *intended* to use only that "force" which was *in fact* used then he had the intent to rape necessary for conviction of burglary in the first degree. The law is, of course, otherwise; for if defendant *intended* to do only what was *in fact done*, i.e., kissing, putting a hand over prosecutrix's mouth and desisting upon her slightest resistance, he would not have had the requisite intent to rape.

The trial judge should have put the principal question in the case in clearer focus for the jury. He should have instructed that defendant, at the time he broke and entered, must have had the intent to have forcible sexual intercourse with the prosecutrix against her will *and* that the force he intended to use must have been force *sufficient to overcome any resistance*

*she might make. State v. Allen,* 186 N.C. 302, 119 S.E. 504 (1923) ; *cf.* N.C.P.I.—Crim. 207.11 (April 1974).

In *Allen,* a prosecution for burglary with intent to rape, the evidence was that prosecutrix was awakened at night by a cold hand touching her thigh under the bed covering. Her husband was also in bed with her. Defendant's evidence was that he was in a drunken condition and did not know what he was doing. The trial judge refused a requested instruction that the State must show an intent by defendant to accomplish his purpose, notwithstanding any resistance the prosecutrix might make. This was held to be reversible error. This Court said, *State v. Allen, supra* at 307, 119 S.E. at 506:

> "So, under the charge of a felonious and burglarious breaking and entering of the presently occupied dwelling-house or sleeping apartment of another, in the night-time, with intent to commit the crime of rape upon the person of any female therein, it is necessary, before the prisoner can be convicted of burglary in the first degree, to show the requisite, specific intent on his part, at the time of the breaking and entry, of gratifying his passions on the person of the woman, and that he intended to do so, at all events, notwithstanding any resistance on her part."

The specific intent required to be proved in this case is identical to the specific intent required to be proved in prosecutions under General Statute 14-22 for assault with intent to rape. Justice Stacy cited as authority in *Allen* just such a case, *State v. Massey,* 86 N.C. 658 (1882). In prosecutions under General Statute 14-22 this Court has consistently held it to be reversible error to fail to instruct the jury that defendant must intend to use whatever force might be necessary to have sexual intercourse with the prosecutrix notwithstanding any resistance she might make. *State v. Moose,* 267 N.C. 97, 147 S.E. 2d 521 (1966) ; *State v. Heater,* 229 N.C. 540, 50 S.E. 2d 309 (1948) ; *State v. Walsh,* 224 N.C. 218, 29 S.E. 2d 743 (1944) ; *cf. United States v. Short,* 4 U.S.C.M.A. 437, 16 C.M.R. 11 (1954) and N.C.P.I.— Crim. 207.30 (June 1972). In *Moose* and *Walsh* there is nothing in the opinion to indicate that defendant requested that such an instruction be given and the instructions as given were construed to permit a guilty verdict upon a jury's finding of an intent to use some lesser degree of force or persuasion.

*State v. Allen, supra,* is distinguishable only in that here there was no request at trial for the correct instruction. I believe, however, that a defendant is entitled to full and complete instruction on an essential element of the offense charged even without request. N. C. Gen. Stat. 1-180; *State v. Ardrey,* 232 N.C. 721, 723, 62 S.E. 2d 53, 55 (1950) ; *State v. Merrick,* 171 N.C. 788, 795, 88 S.E. 501, 505 (1916) ; *cf. State v. Hunt,* 283 N.C. 617, 197 S.E. 2d 513 (1973).

Taken together, General Statute 1-180, *State v. Allen, supra, State v. Moose, supra,* and *State v. Walsh, supra,* require that defendant be given a new trial for failure of the trial court adequately to declare and explain the law relative to the requisite specific intent notwithstanding defendant's failure to make a request for such an instruction.

I vote for a new trial.