STATE OF NORTH CAROLINA v. HORACE WILKINS

No. 49

(Filed 17 May 1979)

1. **Criminal Law § 162— objection to evidence—failure to raise at proper time**
   In a prosecution for second degree murder where defendant allegedly shot his wife with a shotgun, defendant was not prejudiced by the admission into evidence of results of a trigger-pull test performed on the weapon by the State, though defendant was given no notice that such a test had been conducted and that its results would be used in evidence, since defendant did not object to the challenged testimony when it was presented or make a motion to have it stricken; he did not mention the testimony in his post-judgment motions for a new trial and to set the verdict aside; the first time he complained about the testimony was in his motion for appropriate relief which was filed seven days after judgment was passed; and, since the testimony was included in a lengthy description of the weapon and its operation, it is doubtful that the jury gave the statement complained of any significance.

2. **Criminal Law § 89.5— corroborating evidence—slight variance**
   The trial court in a second degree murder prosecution did not err in admitting as corroborating evidence a statement allegedly made by an eyewitness to police, though in the statement the witness quoted defendant as telling his wife he would kill her and at trial the witness quoted defendant as telling his wife he would shoot her, since there was no material variation, particularly in view of the fact that the murder weapon was a .12 gauge shotgun.

3. **Homicide § 24.1— second degree murder—jury instructions**
   The trial court in a second degree murder prosecution did not err in using the phrase "If the State proves beyond a reasonable doubt *or it is admitted*" when instructing on presumptions arising from the intentional infliction of a wound proximately causing death.

4. **Criminal Law § 122.1— additional instructions—no necessity to repeat original instructions**
   In a second degree murder prosecution where the jury, after deliberating for one hour, requested additional instructions on second degree murder, voluntary manslaughter and malice, the trial court was not required to repeat its original instructions on intent and heat of passion.

5. **Criminal Law § 138.7— sentencing—consideration of eligibility for parole**
   There was no merit to defendant's contention that the trial court erred in sentencing him in that it took into consideration when he would be eligible for parole if given a life sentence, since the trial judge indicated no dissatisfaction with the parole system and no mistaken assumption as to when a person serving a life sentence is eligible for parole; he did not impose a more severe sentence for a cause not embraced within the indictment; and the sentence imposed was within the statutory limit.

APPEAL by defendant from *Crissman, J.*, 11 September 1978 Criminal Session of GUILFORD Superior Court, High Point Division.

Upon a plea of not guilty defendant was tried on a bill of indictment charging him with the murder of Miriam Huskey Wilkins, his wife. The state elected to seek no verdict greater than second-degree murder.

Evidence presented by the state is summarized in pertinent part as follows:

Between 1:00 a.m. and 2:00 a.m. on 11 March 1978 defendant, his wife, Eddie Lawrence and Sally Mae Lee Little met at the home of some mutual acquaintances in High Point. Defendant had driven his Buick Riviera to the home and on the backseat he had a television set that he was trying to sell. He invited Lawrence and Mrs. Little to go with him and his wife to try to sell the set.

The four of them, with defendant driving, his wife sitting in the right front seat, and Lawrence and Mrs. Little sitting in the backseat with the television set, drove to another home in High Point. Defendant and Lawrence went into the home while the two women remained in the car. A short while later the two men returned to the car, got the television set and, accompanied by the two women, went into the house. Thereafter, with the men carrying the set, they all came back out of the house and reentered the automobile.

Defendant proceeded to drive and he and his wife began arguing about the television set. Evidently, someone at the house had made them an offer for the set which defendant thought they should accept but Mrs. Wilkins was not willing to sell it for the price offered. When they approached an intersection with Pershing Street, defendant stopped the car, got out, obtained a gun from the trunk of the car, returned to the driver's side, stuck the barrel of the gun inside the car toward his wife and said: "Don't do this to me, don't do this to me". He then told Mrs. Wilkins he would shoot her and she said, "You see me". Immediately thereafter the gun fired and Mrs. Wilkins slumped over.

Mrs. Little and Lawrence got out of the car and defendant sped away to the hospital. On arriving there he asked a nurse to help him get his wife out of the car and into the hospital. When

the nurse checked. Mrs. Wilkins in the automobile, she determined that Mrs. Wilkins was dead. She also observed that defendant was inebriated.

Police arrived very shortly thereafter and found a .12 gauge bolt-action shotgun on the backseat and two unfired .12 gauge shells in the console of defendant's car. At the Pershing Street intersection they found a spent .12 gauge shell. At the police station defendant removed two .12 gauge shells from his pocket and gave them to police.

An autopsy revealed that Mrs. Wilkins was shot in her left chest area and that she died from massive injuries to her left lung, heart, aorta, liver and colon. A blood test disclosed that she was under the influence of alcohol at the time of her death.

Defendant testified as a witness for himself and  his testimony is summarized as follows:

Prior to the night in question he and his wife had decided to leave High Point and move to Norfolk, Virginia. They had terminated their respective jobs on the preceding day and were spending that night visiting various friends and taking care of several business matters. While visiting friends he and his wife consumed several drinks of whiskey.

They owned a television set that they wanted to sell but he did not get mad with his wife about it. The reason he stopped at the Pershing Street intersection was that Lawrence and Mrs. Little were complaining that they did not have sufficient room in the backseat and he intended to make them more comfortable.

After stopping the car he removed some clothing he had on the backseat and placed it in the trunk. He intended to put the television set in the trunk but feeling that the gun would scratch the set, he decided to put the gun in the foot of the backseat. As he was holding the gun and trying to get the back of the driver's seat turned down so he could put the gun in the backseat area, the gun accidentally discharged. He had no intention of shooting his wife or anyone else and immediately rushed her to the hospital to try to save her life.

Other testimony will be referred to in the opinion.

The court instructed the jury that they might return a verdict finding defendant guilty of second-degree murder, guilty of voluntary manslaughter, guilty of involuntary manslaughter or not guilty. They found defendant guilty of second-degree murder and the court entered judgment that defendant be imprisoned for the remainder of his natural life.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General James E. Magner, Jr., for the State.*

*Assistant Public Defender Frederick G. Lind for defendant appellant.*

BRITT, Justice.

[1]   By his first assignment of error, defendant contends the trial court erred in not allowing his motion for a new trial because of the admission of certain testimony. We find no merit in this assignment.

The testimony complained of was given by Special S.B.I. Agent S. T. Carpenter who was stipulated to be an expert in the field of firearms identification. The witness was shown the shotgun found in defendant's car and was asked to explain the way the gun operated. Included in a detailed description of the weapon and how it functioned, Mr. Carptenter stated that if there was a round of ammunition in the chamber, the gun could then be fired by pulling the trigger; that to pull the trigger "it requires seven and one-quarter pounds of force to make the weapon fire."

Defendant argues that he was given no pretrial notice that a trigger-pull test was conducted on the gun and that the state would offer evidence relating thereto; that in April before the trial in September, pursuant to G.S. 15A-902, he had requested the district attorney to provide him with a copy of, or to permit him to inspect and copy or photograph, results or reports of tests or experiments made in connection with the case; and that the admission of evidence relating to the trigger-pull test was very prejudicial to his plea of accident.

We note that defendant did not object to the challenged testimony when it was presented or make a motion to have it stricken; that in his post-judgment motions for a new trial and to set the verdict aside, he did not mention the testimony; and that

State v. Wilkins

the first time he complained about the testimony was in his motion for appropriate relief which was filed seven days after judgment was passed.

"It is well settled that with the exception of evidence precluded by statute in furtherance of public policy [which exception does not apply to this case], the failure to object to the introduction of the evidence is a waiver of the right to do so, and its admission, even if incompetent, is not a proper basis for appeal." 4 Strong's N.C. Index 3d, Criminal Law § 162, p. 825; *State v. Lowery*, 286 N.C. 698, 213 S.E. 2d 255 (1975), *death sentence vacated*, 428 U.S. 902, 96 S.Ct. 3203, 49 L.Ed. 2d 1206 (1976); *State v. Gurley*, 283 N.C. 541, 196 S.E. 2d 725 (1973). *See also:* Rule 10, Rules of Appellate Procedure, 287 N.C. 671, 698. While recognizing the quoted rule, defendant argues that by virtue of G.S. 15A-1446(b) this court is authorized to consider his exception to the challenged testimony in the interest of justice "if it determines it appropriate to do so."

We do not think the ends of justice require us to honor defendant's belated exception to the testimony in question. Since the testimony was included in a lengthy description ·of the weapon and its operation, it is very doubtful that the jury gave the statement complained of any significance. In fact, defendant's counsel admitted on oral argument in this court that the statement escaped his attention until after the trial. That admission would indicate that the trigger-pull test evidence was not argued to the jury. We perceive no prejudice to defendant.

[2] By his second assignment of error, defendant contends the trial court erred in admitting as corroborating evidence a statement allegedly made by Mrs. Little to the police for the reason that the statement materially differed from the trial testimony of Mrs. Little. This assignment has no merit.

In the statement Mrs. Little told about the four of them going to a certain house and the men carrying the television set; that someone at the house offered $75 for the set; that defendant and his wife talked about it and she said she was not going to accept $75 for it. The statement then reads in pertinent part (defendant being referred to by his nickname "Goodtime"):

"Goodtime and his wife began arguing and we all began walking towards the car. When we got to the car, he told her to hush, he was doing this. We all got into the car and left. The argument continued in the car. When we almost got to Green Street, he stopped the car and said don't do this to me, don't do this to me, I'll kill you.

"He then got out of the car and went to the trunk. He unlocked the trunk, got out the shotgun and came back to the car on the driver's side. The door to the car was still open. He pointed the shotgun at her, his wife head, and said I'll kill you. She said you see me.

"I started screaming and said don't play with the gun, don't play with the gun. The gun went off. I heard her screaming. Then I started hollering to Eddie to let me out. Eddie opened the passenger door and we both got out of the car."

In her testimony Mrs. Little stated that as defendant stopped the car he said, "Don't do this to me, don't do this to me". The record then reveals:

"Then he came back with a gun and stuck it into the car in this position (indicating) and says I'll shoot you. She said you see me. Then he said I'll shoot you and—well, she didn't ever say nothing else. And she grabbed at the gun once, but it didn't go off right then. But just in a second then it went off.

"Well, about all I heard him say was I'll shoot you, because I was screaming so bad at the time he stuck the gun in the car."

"Where proper instructions are given, slight variances in corroborating testimony, including such variances between a witness' testimony and his prior statement, do not render the corroborating testimony inadmissible, but go only to its credibility and weight, it being for the jury to determine whether or not the testimony does in fact corroborate the witness. And a discrepancy in minor details between testimony of the prosecuting witness and testimony offered in corroboration thereof does not warrant a new trial." 4 Strong's N.C. Index 3d, Criminal Law § 89.5, pp. 427-28.

The only variation we observe between the alleged statement of the witness and her testimony at trial that approaches significance is that in the statement she quoted defendant as telling his wife that he would *kill* her and at trial she quoted him as saying that he would *shoot* her. Certainly this is not a material variation, particularly in view of the fact that the weapon was a .12 gauge shotgun. The trial judge properly instructed the jury with respect to corroborating evidence. We perceive no error.

[3] By this third assignment of error defendant contends the trial court in its charge to the jury on second-degree murder erred in giving the following instruction:

> "If the State proves beyond a reasonable doubt *or it is admitted* that the defendant intentionally killed Marian Wilkens with a deadly weapon or intentionally inflicted a wound upon Marian Wilkens with a deadly weapon or intentionally inflicted a wound upon Marian Wilkens with a deadly weapon that proximately caused her death, the law implies, first, that the killing was unlawful; and second, that it was done with malice; and if nothing else appears, the defendant would be guilty of second degree murder." (Emphasis added.)

Defendant argues that the instruction suggests that he admitted intentionally killing his wife, that there was no evidence that he made such an admission, and that charging the jury on a principle of law not supported by the evidence was prejudicial to him. We do not find this argument persuasive.

It has long been the law in this state that in instructing the jury the trial judge must declare and explain the law arising on the evidence and that he must not express an opinion on the evidence. G.S. 15A-1232 (formerly G.S. 1-180). The primary purpose of the jury charge is to give clear instructions which apply the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict. *State v. Williams*, 280 N.C. 132, 184 S.E. 2d 875 (1971).

While there was no evidentiary basis for the trial judge to include the clause "or it is admitted" in the quoted instruction, and the instruction would have been more accurate without it, we perceive no prejudice to defendant. The court in effect was stating a well established principle of law and we believe defend-

ant's conviction was brought about primarily by the strong and direct testimony of Mrs. Little rather than the inclusion of this clause in the charge. Furthermore, when the jury asked for additional instructions as hereinafter discussed, the court did not include the clause complained of.

[4] By his fourth assignment of error defendant contends the trial court erred in its supplemental instructions to the jury. This assignment has no merit.

After the jury had deliberated for approximately one hour they returned to the courtroom. The record discloses:

"THE FOREMAN: The jury needs to be instructed, Your Honor, again on the difference between guilty of murder in the second degree or guilty of voluntary manslaughter; particularly, around the word 'malice.'

"THE COURT: Well, members of the jury, of course, the Court stated to you that murder in the second degree is the unlawful killing of a human being with malice and that voluntary manslaughter is the unlawful killing without malice and without premeditation and deliberation. That's the two differences.

"Of course, the Court also instructed you that if the State proves beyond a reasonable doubt that the defendant intentionally killed his wife with a deadly weapon or intentionally inflicted a wound upon his wife with a deadly weapon that proximately caused her death, then that the law implies that the killing was unlawful and that it was done with malice and if nothing else appears, that the defendant would be guilty of second degree murder.

"Now, as to malice. Aside from that, malice means not only hatred, ill will or spite as it's ordinarily understood. To be sure, that is malice. But it also means that condition of the mind which prompts a person to take the life of another intentionally or to intentionally inflict a wound with a deadly weapon upon another which proximately results in that person's death without just cause or excuse, without justification.

"Does that clear it up? Any other questions?

"THE FOREMAN: Thank you, Your Honor."

Defendant argues that the supplemental instructions were incomplete for the reason that the court did not repeat its original instructions on intent and heat of passion. We are not impressed with this argument. An analogous situation arose in *State v. Murray*, 216 N.C. 681, 6 S.E. 2d 513 (1940), where defendants were tried for first-degree murder and pled insanity. After deliberating for some period of time the jury returned to the courtroom and asked for additional instructions as to whether defendants would be guilty upon a particular state of facts. The trial judge correctly charged on the point presented and this court held that he was not required to repeat his instructions on the defense of insanity.

Furthermore, when the trial judge has instructed the jury correctly and adequately on the essential features of the case but defendant desires more elaboration on any point, then he should request further instructions; otherwise, he cannot complain. *State v. Everette*, 284 N.C. 81, 199 S.E. 2d 462 (1973). Defendant did not request additional instructions in this case. The trial judge is not required to reiterate the entire charge when the jury requests an additional instruction to clarify a particular point. *State v. Dawson*, 278 N.C. 351, 365, 180 S.E. 2d 140 (1971).

[5] By his sixth assignment of error, defendant contends the trial court erred in sentencing him in that it took into consideration when he would be eligible for parole. We find no merit in this assignment.

After the jury had returned its verdict and as the court was about to pass judgment on defendant, the trial judge asked the assistant district attorney: "What do you understand that would be the minimum length of time if the Court gives him life?" The assistant district attorney replied: "Twenty years. But the parole board would have it in their option to do what they wanted, I guess, at that time." The court thereupon ordered that defendant be imprisoned for the remainder of his natural life.

While defendant recognizes that a sentence within the statutory limit is presumed regular and valid, he aruges that the presumption is not conclusive; and if the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome and the sentence is in violation of the defendant's rights. He contends that the trial judge in this case improperly

considered when he might be eligible for parole and cites *State v. Snowden*, 26 N.C. App. 45, 215 S.E. 2d 157, *cert. denied*, 288 N.C. 251, 217 S.E. 2d 675 (1975).

In *Snowden* the Court of Appeals held that sentences imposed on the defendants for narcotics offenses must be vacated and the cause remanded for resentencing where the record affirmatively discloses that the severity of the sentences was based on the trial judge's dissatisfaction with the length of time committed offenders remain in prison and his mistaken assumption that the prisoners would automatically be released on parole at the expiration of one-fourth of their sentences. The Court of Appeals rendered a similar decision in *State v. Hodge*, 27 N.C. App. 502, 219 S.E. 2d 568 (1975).

The Court of Appeals in *Snowden* relied on *State v. Swinney*, 271 N.C. 130, 155 S.E. 2d 545 (1967). In that case, the defendant had participated in a drinking party with her husband before fatally shooting him. This court, in a four-three decision, concluded that the trial court's sentence was based not on involuntary manslaughter but on defendant's participation in the party. The sentence was vacated and the case was remanded for resentencing.

The ills appearing in *Swinney* and *Snowden* do not appear in this case. Here, the trial judge indicated no dissatisfaction with the parole system and no mistaken assumption as to when a person serving a life sentence is eligible for parole. *See:* G.S. 15A-1371. He did not impose a more severe sentence, as in *Swinney*, for a cause not embraced within the indictment.

Trial judges have broad discretion in making a judgment as to the proper punishment for crime. Their judgment will not be disturbed unless there is a showing of abuse of discretion, procedural conduct prejudicial to the defendant, or circumstances which manifest inherent unfairness. Pre-sentence investigations are favored and encouraged. *State v. Locklear*, 294 N.C. 210, 241 S.E. 2d 65 (1978); *State v. Pope*, 257 N.C. 326, 126 S.E. 2d 126 (1962). This assignment of error is overruled.

Defendant's remaining assignments of error relate to the failure of the trial judge to grant his motions to set aside the verdict and arrest the judgment, and to signing and entering the

judgment. He makes no argument in support of these assignments and we find no merit in any of them.

In defendant's trial and the judgment entered, we find

No error.