STATE OF NORTH CAROLINA v. ERIC COLEMAN

No. 8216SC1239

(Filed 15 November 1983)

1. **Burglary and Unlawful Breakings § 1— elements of first degree burglary**

The elements of burglary in the first degree are: (1) the breaking (2) and entering (3) at night (4) into a dwelling house or room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein.

**2. Burglary and Unlawful Breakings § 5— first degree burglary—sufficiency of evidence**

   The State's evidence was sufficient for the jury to find a nonconsensual entry and an intent to commit larceny so as to support the conviction of defendant for first degree burglary where it tended to show that defendant opened a window and crawled through it into an occupied home at 4:30 a.m.; an occupant watched defendant walk toward various rooms in the home; and when such occupant began to scream, defendant first tried to choke her and then fled.

**3. Criminal Law § 122.1— additional instructions—failure to repeat instruction on not guilty verdict**

   The trial judge, in giving additional instructions at the jury's request, did not err in failing to repeat his instruction that the jury could return a verdict of not guilty.

**4. Criminal Law § 99.5— trial judge's admonishment of counsel—absence of prejudice**

   Defendant was not prejudiced when the trial judge, prior to trial and in the presence of the jury panel, admonished defendant's counsel about his absence when other cases in which he was involved had been called for trial. Nor was defendant prejudiced by the trial judge's remarks when he denied defense counsel's motion to be relieved from representing defendant.

   Judge PHILLIPS concurring.

APPEAL by defendant from *Bailey, Judge.* Judgment entered 18 May 1982 in Superior Court, ROBESON County. Heard in the Court of Appeals 19 September 1983.

Defendant was charged in a bill of indictment with first degree burglary. From a jury trial convicting defendant of burglary as charged, defendant appeals.

The State's evidence tended to show: Vanessa Wallace testified that on 27 December, sometime between 4:00 and 4:30 a.m., she was lying awake in bed when she saw someone moving in the house outside her bedroom. She watched this person walk toward various rooms, including her own bedroom, where he stopped and peered in. He was carrying a towel that belonged in her household. Vanessa recognized the intruder as the defendant and began to scream. Defendant started choking her, then stopped and fled.

Jacquelyn Wallace testified that she was in bed, in the same bedroom as her sister, Vanessa, when she heard something on the couch in the living room. A short time later, she awoke to her

sister Vanessa's screams and saw defendant run from their bed-room.

Mr. Wallace also awoke to his daughter's screams. He testified that he got up and saw someone run from their house toward defendant's house about two blocks away. Mr. Wallace noticed mud on their living room couch, which had not been there previously. The couch was directly in front of a window.

Ruben Wallace, Jr., slept on the living room couch the evening of the break-in. He testified that before he went to sleep, he had taken some medicine for a cold which made him drowsy. He did not awaken until he heard his sister scream. He, too, noticed some dirt on the couch that was not there when he had gone to sleep. He testified that the window above the couch was closed when he went to sleep.

Police Officer Terry Hunt received a call at around 4:30 a.m. and went to the Wallace residence. Once there, he testified that he noticed the window above the living room couch was raised. Upon being advised that defendant had been in the house, Officer Hunt went to defendant's residence and saw defendant in the back of the room changing his shirt. Defendant's parents were upset, so the Officer called for assistance.

Deputy Sheriff Cynthia Floyd responded to the call and went to the Wallace residence. She testified that she, too, noticed that the window above the living room couch was raised and that there was mud on the couch. Deputy Floyd then went to defend-ant's house and placed defendant under arrest.

On 27 December at around 7:30 p.m., Vanessa and Jacquelyn Wallace gave statements to Ms. Floyd and another detective that substantially corroborated their testimonies at trial.

The defendant's evidence tended to show: Defendant testified that he, his friend, Calvin McNair, and his girlfriend, Antonia Mickins, were together on the evening of 26 December and early morning of 27 December. At around 3:00 a.m., they went to Lumberton to visit Antonia's brother. They stayed until around 4:30 a.m. Defendant then drove Antonia home and arrived at his own home at around 5:00 a.m.

Calvin McNair testified that he was with defendant on the evening of 26 December and the morning of 27 December until around 3:00 a.m.

Antonia Mickins testified that she was with defendant on the evening of 26 December and the morning of 27 December until 4:55 a.m. when defendant brought her home from her brother's house.

James Mickins, Antonia's brother, testified that sometime after 1:00 a.m. on 26, 27 or 28 December, Antonia and defendant stopped by and visited for about an hour to an hour and a half.

Mrs. Coleman, defendant's mother, testified that defendant was not at home when Officer Hunt came over looking for him, but that he came home some time thereafter.

On rebuttal, the State's evidence tended to show: Mrs. Mickins, Antonia's mother, testified that her daughter arrived home at around 1:00 a.m. on 27 December. Mrs. Mickins heard no one enter or leave the house after 1:00 a.m.

The jury found defendant guilty of burglary as charged, the intended felony therein being larceny.

*Attorney General Edmisten, by Frank P. Graham, Assistant Attorney General, for the State.*

*Regan and Regan, by John C. B. Regan, III, for defendant appellant.*

VAUGHN, Chief Judge.

Defendant contends that the trial court erred in failing to grant his motion for a directed verdict of not guilty at the close of the State's evidence. We find no merit in defendant's contention. Upon a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State, with every reasonable inference or intendment drawn in its favor. *State v. Locklear,* 304 N.C. 534, 284 S.E. 2d 500 (1981); *see also State v. Witherspoon,* 293 N.C. 321, 237 S.E. 2d 822 (1977). If there is any evidence tending to prove defendant's guilt or which reasonably leads to that conclusion as a logical and legitimate deduction, it is for the jury to say whether it is convinced beyond a reasonable

doubt of defendant's guilt. *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1976). We think the evidence presented by the State in this case was ample to show that the crime was committed and that defendant was the perpetrator. Any contradictions or discrepancies in the evidence were matters for the jury and do not warrant a directed verdict. *See id.*

[1]   The elements of burglary in the first degree are: (1) the breaking (2) and entering (3) at night (4) into a dwelling house or room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony (i.e. larceny) therein. *State v. Wells,* 290 N.C. 485, 226 S.E. 2d 325 (1976). To withstand defendant's motion, the State must prove all of the essential elements of the offense. *See State v. Lowe,* 295 N.C. 596, 247 S.E. 2d 878 (1978). Defendant contends that the State did not sufficiently prove two elements of its charge of first degree burglary.

[2]   Defendant, first, contends that the State failed to prove a nonconsensual entry. As proof of consent, defendant offers testimony of Mr. Wallace that he thought defendant had been to his house before to play ball with his boys. We fail to see how previous consent shows consent in the instant case. Here, the evidence showed that at around 4:30 a.m. defendant opened a window and crawled through to the Wallace home. Upon seeing defendant, one of the occupants screamed, and defendant fled. From such evidence, the jury could and did draw the conclusion that defendant's entrance was nonconsensual. The moving and raising of the window constituted a nonconsensual entry, i.e., a breaking. *See State v. Wells, supra.*

Defendant also contends that the State did not prove defendant's intent to commit larceny. To establish this element, the State need not prove that larceny was actually committed. It is, furthermore, unnecessary to allege that defendant intended to steal a specific item of property. *State v. Hooper,* 227 N.C. 633, 44 S.E. 2d 42 (1947). In this case, defendant did not complete the crime of larceny, and, therefore, his intent must be inferred from the evidence.

The evidence showed that defendant broke into and entered the Wallace home at around 4:30 a.m. and that when one of the occupants began screaming, he first tried to choke her and then

fled. While defendant's actions could be subject to more than one interpretation, it is the function of the jury, not the Court, to infer defendant's intent from the circumstances.

The trial judge properly instructed the jury: "The State must prove beyond a reasonable doubt . . . that at the time of breaking and entering, defendant intended to commit a felony. In this case, the State's contention is . . . the felony of larceny." The jury, given proper instructions, must determine defendant's intent at the time he forced entrance into the house. *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968). In *State v. Accor and State v. Moore*, 277 N.C. 65, 74, 175 S.E. 2d 583, 589 (1970), the Court quoted with approval the following from *State v. McBryde*, 97 N.C. 393, 397, 1 S.E. 925, 927 (1887):

> The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the nighttime, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, in the nighttime, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent.

Such was the inference drawn by the jury in the instant case.

[3] Defendant, next, contends that the trial court erred when the jury requested additional instructions and the judge did not repeat his instruction that they could return a verdict of not guilty. This contention is without merit. The judge, in the instant case, properly instructed the jury on all the essential elements of the charge. Upon request for a repetition of instructions on a particular point, a judge is not required to repeat his entire charge. *State v. Dawson*, 278 N.C. 351, 180 S.E. 2d 140 (1971). At trial, defendant did not request the judge to repeat his instruction regarding a verdict of "not guilty." "[W]hen the trial judge has instructed the jury correctly and adequately on the essential features of the case but defendant desires more elaboration on any point, then he should request further instructions; otherwise,

he cannot complain." *State v. Wilkins*, 297 N.C. 237, 245, 254 S.E. 2d 598, 603 (1979).

[4] In his last two assignments of error, defendant argues that the trial judge's admonishment of trial counsel (he was not then represented by his present counsel) prior to trial and his manner of denying counsel's motion, at the request of defendant, to be relieved, prejudiced the jury and denied defendant a fair trial.

The judge's duty of absolute impartiality has been reiterated by our courts many times. As stated by the Supreme Court in *State v. Holden*, 280 N.C. 426, 429, 185 S.E. 2d 889, 892 (1972): "Jurors respect the judge and are easily influenced by suggestions, whether intentional or otherwise, emanating from the bench. Consequently, the judge 'must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury, '" *quoting State v. Carter*, 233 N.C. 581, 583, 65 S.E. 2d 9, 10 (1951). The judge's duty of impartiality extends to defense counsel. He should refrain from remarks which tend to belittle or humiliate counsel since a jury hearing such remarks may tend to disbelieve evidence adduced in defendant's behalf. *Id.*

In this case, prior to trial, in front of the jury panel, the judge admonished defendant's counsel for his prior absences when his cases were scheduled for trial:

> THE COURT: Mr. Swann, you have cases, to my knowledge, in which you were not present or have been out of place when the cases were called for trial. Last week you had nine cases on the calendar — some for arraignment, some for trial. We heard from your secretary that you were involved in another matter in Cumberland County, but never could verify that with you.
>
> I'm tired of it. I'm not going to put up with it anymore. I have given serious thought to citing you to show cause whether you should not be held in contempt of this Court, and have decided not to do that.

Although we do not condone the judge's admonishment and criticism in the presence of the jury panel, it must be viewed in light of all the facts and circumstances. *See State v. Gibson*, 233 N.C. 691, 65 S.E. 2d 508 (1951); *State v. Blue*, 17 N.C. App. 526,

195 S.E. 2d 104 (1973). Not every ill-advised expression by the trial judge has such harmful effect as to require a reversal. *State v. Holden, supra.* In this case, the judge's comments occurred two hours before trial and had nothing to do with the merits of defendant's case. We do not find that such comments prejudiced the defendant. "The 'bare possibility' that defendant may have suffered prejudice is not enough to overturn a guilty verdict." *State v. Norris,* 26 N.C. App. 259, 263, 215 S.E. 2d 875, 877, *cert. denied, appeal dismissed,* 288 N.C. 249, 217 S.E. 2d 673 (1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed. 2d 83 (1976).

Defendant also contends that the judge's remarks when he denied defense counsel's motion to be relieved prejudiced defendant, denying him a fair trial. When defense counsel moved to withdraw, the judge, after some discussion with the district attorney, asked the district attorney if he was "ready to go to bat." When the district attorney responded affirmatively, the judge told him to call his case. The following exchange then occurred:

DEFENSE COUNSEL: Does that mean the motion is denied, your Honor?"

THE COURT: "I have not relieved you . . ."

We fail to see how defendant was prejudiced from the judge's comments. The judge, in ruling on counsel's motion, exercised his discretionary power. Absent an abuse of discretion, such ruling is not subject to review. *Highway Commission v. Hemphill,* 269 N.C. 535, 153 S.E. 2d 22 (1967). We find no abuse of such discretion nor any prejudice resulting to defendant warranting a reversal.

No error.

Judges WHICHARD and PHILLIPS concur.

Judge PHILLIPS concurring.

Though I agree that no prejudicial legal error was committed during the course of the trial and that another trial would almost certainly end as this one did, I see no semblance of an excuse for the trial judge berating defendant's lawyer in open court before the panel of jurors from which those who decided his case were

selected. Whether the judge had cause for being upset with the lawyer is beside the point; the judge's grievance, according to his own remarks, did not develop before the jury, but had existed for some time, and should have been addressed in chambers, out of the panel's presence. The lawyer was not in court for himself; he was there only to act for defendant and his other clients. By gratuitously demeaning the lawyer, the judge also demeaned the defendant to some extent. Which is why trial judges should refrain from airing their complaints against lawyers in the presence of jurors the lawyers will soon be contending before. If the contest between the State and defendant had been closer, I would find it difficult, indeed, not to find prejudicial error.