STATE OF NORTH CAROLINA v. TYRONE MICHAEL BRINKLEY

No. COA02-1417

(Filed 5 August 2003)

**Criminal Law— trial court's expression of opinion on witness credibility—disparaging comments about defense counsel**

The trial court erred in an assault with a deadly weapon with intent to kill inflicting serious injury case by expressing its opinions as to a witness's credibility and by repeatedly making disparaging comments concerning the ability and character of defense counsel, and defendant is entitled to a new trial, because when all the incidents raised by defendant are viewed in light of their cumulative effect upon the jury, the atmosphere of the trial was tainted by the trial court's comments to the detriment of defendant.

Appeal by defendant from judgment entered 9 March 2001 by Judge Evelyn W. Hill in Durham County Superior Court. Heard in the Court of Appeals 11 June 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General John G. Barnwell, for the State.*

*Massengale & Ozer, by Marilyn G. Ozer, for defendant-appellant.*

HUNTER, Judge.

Tyrone Michael Brinkley ("defendant") was indicted on 18 December 1999 for assault with a deadly weapon with the intent to kill inflicting serious injury. The matter was tried before a jury, and on 9 March 2001, defendant was found guilty as charged and sentenced to a term of thirty-four to fifty months imprisonment. Defendant appeals the conviction and requests a new trial. For the reasons stated herein, we conclude defendant is entitled to a new trial.

At trial, the evidence tended to show that during the early morning hours of 6 July 1999, Michael Jackson ("Jackson") was sitting on a Cadillac in front of the apartment of his sister, Margo Jackson ("Margo"), when he saw three men exit a white Montero Jeep and approach Margo's front door. When Margo opened the door, one of the men pointed a gun in her face and forced himself inside the apart-

ment. As Jackson ran to get help, it is disputed as to whether he warned Anthony Nesmith ("Nesmith"), an associate of his with whom Jackson had "done business" with earlier that evening, not to go near the apartment because the men had guns. Nevertheless, Nesmith learned of the incident and, concerned about the safety of several children inside the apartment, approached the apartment and began banging on the door. Suddenly, a man with long dreadlocks holding a rifle appeared from the side of the apartment. Jackson watched as Nesmith was shot in the back as he tried to run away.

Following the shooting, Jackson was unable to identify Nesmith's assailant in a photo line-up, but did identify defendant as the shooter at trial. LaToya Ray ("Toya"), another person in Margo's home that evening, also identified defendant as the man who shot Nesmith. Finally, Investigator W. C. Pitt ("Investigator Pitt"), of the Durham Police Department, testified that Toya had identified defendant as one of the men at her home on 6 July 1999. Investigator Pitt further testified that he had never seen defendant with dreadlocks. Additional facts will be provided in our analysis of defendant's assignments of error.

Defendant's first assignment of error argues that his conviction must be vacated because the trial judge erroneously expressed her opinions as to Jackson's credibility by (1) taking over the State's direct examination of him, (2) finishing his answers to certain questions, and (3) commenting on those answers. Defendant's second assignment of error argues that he is entitled to a new trial because the trial judge repeatedly made disparaging comments concerning the ability and character of defendant's counsel, Mr. Mark Simeon ("Mr. Simeon"). By these two assigned errors, defendant asserts the judge's actions were not impartial during the trial and violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Due to their similarities, we shall address both arguments simultaneously.

A trial judge occupies an esteemed position whereby " 'jurors entertain great respect for [a judge's] opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice' any litigant in his courtroom." *McNeill v. Durham County ABC Bd.*, 322 N.C. 425, 429, 368 S.E.2d 619, 622 (1988) (quoting *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951)). *See also* N.C. Gen. Stat. § 15A-1222 (2001). Nevertheless, this Court has recognized that "not every improper remark made by the trial judge requires a new

trial. When considering an improper remark in light of the circumstances under which it was made, the underlying result may manifest mere harmless error." *State v. Summerlin*, 98 N.C. App. 167, 174, 390 S.E.2d 358, 361 (1990) (citation omitted). In other words, "[w]hether the accused was deprived of a fair trial by the challenged remarks [of the court] must be determined by what was said and its probable effect upon the jury in light of all attendant circumstances, the burden of showing prejudice being upon the appellant." *State v. Faircloth*, 297 N.C. 388, 392, 255 S.E.2d 366, 369 (1979).

In the case *sub judice*, defendant offers several incidents by which he contends the trial judge's extraneous comments were so improper and disparaging as to deprive him of a fair and impartial trial. While we note that each incident offered by defendant is somewhat inappropriate, there are three incidents that most strongly support defendant's assertion that his constitutional rights were violated.

First, while cross-examining Jackson, Mr. Simeon attempted to pinpoint the ultimate location of the three men in the Montero Jeep who arrived at Toya's apartment. The following exchange took place:

Q. And there was a third person who went around the back[?]

A. I don't know what happened to the third person. I just seen two people go in the front door. But I know three people got out of the Jeep.

Q. And two went to the front door?

A. Yes.

THE COURT: We've established that to the point that if you want to go there one more time you'll probably see *13 collective people throwing up*. We have established that two went to the front door. Now what we want to know is what happened next. Okay.

(Emphasis added.) Defendant contends that the judge's crude comment showed little respect for Mr. Simeon and destroyed the jury's respect for the defense counsel as well as the court system.

Thereafter, Mr. Simeon continued his cross-examination of Jackson, during which he asked questions that implied Jackson was standing guard outside a drug house on the night of the shooting. The following exchange ensued:

**STATE v. BRINKLEY**

[159 N.C. App. 446 (2003)]

Q. Were you standing guard or on watch on his Cadillac in connection with the business you just referred to?

A. The business we was doing, we was smoking a blunt. That's what we was doing. That was the business that we was doing. I thought that it would incriminate me. That's the reason why I didn't answer my business yesterday. That's the business that we was doing.

Q. Well, I'll ask you another kind of way then. Why was it that you were standing guard or on watch outside on Liberty Street again?

A. I was standing—

MR. HUNTER: Objection.

THE COURT: Sir, you know or should know, and frankly at this point the Court doesn't know whether you know or should know, that he has not testified. Every time you've tried to get him to say he was standing look out or guard he's answered that he wasn't. So you can't start your question with why you were standing guard and looking.

MR. SIMEON: I'm sorry, Judge. My recollection was that he did testify affirmatively that he was standing guard, standing watch.

THE COURT: He said he was just standing watch over his sister's house *as any good male would. Not in relation to any nefarious dealings.* So you need to phrase your question based on the testimony.

(Emphasis added.) Defendant contends that despite defense counsel's attempt to discredit Jackson, the judge's comments nullified Jackson's admission that he was engaged in an illegal act and left the jury with the impression that the court believed Jackson to be a "good male."

The final incident that most strongly supports defendant's assertion that the trial judge's extraneous comments violated his constitutional rights to an impartial trial took place during Mr. Simeon's cross-examination of Toya. Mr. Simeon made reference to two statements Toya allegedly gave the police following the shooting. Toya testified that she did not recognize one of the statements even though the signature on that statement looked like hers. The court ruled that

STATE v. BRINKLEY

[159 N.C. App. 446 (2003)]

the statement could not be admitted into evidence because Toya could not recall signing it. Thereafter, the following exchange took place in the presence of the jury when Mr. Simeon asked a question about the inadmissible statement:

> Q. [Toya, d]o you have any idea of why your signature might appear on any statement that indicated that neither one of them had—

> THE COURT: Sustained. Counselor, that is the statement that was not admitted into evidence, correct? Is that Number 8, Counselor?

> MR. SIMEON: Yes, Judge. Withdrawn.

> THE COURT: No. Forget withdrawn, Counselor. You moved to admit it and the Court denied admitting it into evidence. Then you deliberately went and asked a question using the information from that, which is not only *improper, unethical, but also in flagrant violation of what the Court ruled. I'm at my wit's end.*

(Emphasis added.) Defendant contends that the judge's unnecessarily harsh criticisms of Mr. Simeon in the presence of the jury may have (1) prejudiced the jury against defendant, and (2) given the jury the impression that defense counsel was not trustworthy or ethical. With respect to defendant's contentions on all three incidents, we agree.

It is fundamental to due process that every defendant be tried "before an impartial judge and an unprejudiced jury in an *atmosphere of judicial calm.*" *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951) (emphasis added). While we recognize that a trial judge may be justified in verbally reprimanding counsel for certain actions, care should be taken to conduct such reprimands outside the presence of the jury to ensure the court does not prejudice the jury against defendant. When all the incidents raised by defendant, particularly the three cited above, are viewed in light of their cumulative effect upon the jury, we are compelled to hold that the atmosphere of the trial was tainted by the trial judge's comments to the detriment of defendant. We feel certain the learned trial judge did not intend to prejudice the defense or in any manner belittle defense counsel; however, "when these inadvertences occur, they must be corrected, as they could have conveyed to the jury the

impression of judicial leaning." *State v. Hewitt*, 19 N.C. App. 666, 669, 199 S.E.2d 695, 697 (1973).

Accordingly, defendant is entitled to a new trial. This Court need not consider defendant's remaining assignments of error as they may not recur. *Id.*

New trial.

Judges TIMMONS-GOODSON and ELMORE concur.