TYSON, Judge.
Travis Deontt Monk ("defendant") appeals from judgments entered after a jury found him to be guilty of possession, sale, and delivery of cocaine. We find no prejudicial error at trial, but vacate and remand for resentencing.
I. Background
Defendant was charged with two counts of possession with intent to sell and deliver cocaine, two counts of sale of cocaine, and two counts of delivery of cocaine. The State's evidence tended to show that in 2002, Detective Kevin Herring ("Detective Herring") of the Apex Police Department worked with the Wake County Interagency Drug Task Force in its undercover operation in an open-air drug market within the Apex city limits. The task forceroutinely used confidential informants to make controlled purchases of crack cocaine. Edward Henry Dunn ("Dunn") became a confidential informant in April 2002 in exchange for a reduction of his pending charge of possession of cocaine to a misdemeanor charge. After the plea agreement was fulfilled, Dunn became a paid informant for the task force.
On 15 May 2002, Detective Herring gave Dunn $40.00 to purchase cocaine for $20.00 in the Justice Heights community. Dunn walked down West Street and met defendant. Dunn showed defendant the $40.00 and purchased crack cocaine from him. Dunn turned over the $20.00 worth of cocaine and the extra $20.00 cash to Detective Herring. On 21 August 2002, Detective Herring and Detective J.D. Barry gave Dunn $20.00 and told Dunn to "secure a second buy" from someone from whom he had previously bought cocaine. Dunn walked down South Salem near Justice Heights, approached defendant, and asked him for a "20." Defendant sold Dunn crack cocaine in return for $20.00. Dunn met the detectives and again turned over the cocaine he purchased from defendant.
A jury found defendant to be guilty as charged. The trial court arrested judgment on the delivery of cocaine convictions. The trial court determined defendant to have five prior record points and sentenced him, as a prior record level III, to two consecutive terms of fourteen to seventeen months imprisonment. Defendant appeals.
II. Issues
Defendant assigns error to: (1) several remarks made by thetrial judge in the presence of the jury; and (2) determining defendant had five prior record level points resulting in a prior record level of III.
III. Right to an Impartial Judge
Defendant argues the trial judge's comments during the cross-examination of State witnesses, Detective Herring and Dunn, violated his constitutional rights to an impartial trial.
A judge's broad discretionary power to supervise and control the trial "will not be disturbed absent a manifest abuse of discretion." State v. Goldman, 311 N.C. 338, 350, 317 S.E.2d 361, 368 (1984). "The judge's duty of impartiality extends to defense counsel. He should refrain from remarks which tend to belittle or humiliate counsel since a jury hearing such remarks may tend to disbelieve evidence adduced in defendant's behalf." State v. Coleman, 65 N.C. App. 23, 29, 308 S.E.2d 742, 746 (1983), cert. denied, 311 N.C. 404, 319 S.E.2d 275 (1984). A totality of the circumstances test is used to determine whether a judge's comments cross into the realm of impermissible opinion. State v. Larrimore, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995). "[U]nless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." Id. (quoting State v. Perry, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950)).
With this standard of review, we turn our attention to the trial judge's comments and the context in which they were made. During the cross-examination of Detective Herring, defense counselquestioned him about his working relationship with Dunn. The following exchange occurred:
Q. And so you - you were attempting to build some trust with [Dunn], but you still never knew what his background was. I mean, I guess I ask because I'm curious as to whether -
THE COURT: Sir, you ask a question, he answers the question. Nobody really cares what the attorneys think.
[DEFENSE COUNSEL]: I'm trying to rephrase the question so he understands it.
THE COURT: Well make it short and in English and we'll be fine.
After a lunch break, defense counsel resumed his cross-examination of Detective Herring and the following exchange took place:
Q. Officer Herring, I'd like to pick up where we left off if we could and I had asked you how far Mr. Dunn, informant had walk[ed] in a 30-minute period. And basically what I'd asked you was is it true that according to a report he had walked down Salem Street and then possibly taken a right on West for a short distance and then turned and ran back across Salem Street, is that correct? Is it correct that your report says at the corner of Salem Street?
THE COURT: Sir, once you ask a question, don't ask another one until he answers it unless he can't find where you're talking about. Do you know what he's talking about?
Defendant next points to comments made while defense counsel questioned Dunn. On cross-examination, defense counsel attempted to ask Dunn about offenses with which he had been charged. The prosecutor had elicited testimony from Dunn on direct examination that Dunn had become an informant to reduce a possession of cocaine charge to a misdemeanor. Defense counsel brought Dunn's attentionto this matter by stating:
Q. Now, earlier the Assistant District Attorney was asking you what you've been charged with in the past and you relayed that you've been charged with possession of cocaine and -
THE COURT: Excuse me, the question she asked what?
[DEFENSE ATTORNEY]: - the drug -
THE COURT: Excuse me, I'm talking. She asked what he had been convicted of, not charged. Asking someone what they've been charged with is an improper question. So if you're going that way, don't go there.
[DEFENSE ATTORNEY]: May we approach, your Honor?
THE COURT: Sure.
(Bench conference.)
THE COURT: Sustained.
In continued cross-examination, defense counsel asked Dunn whether he had been convicted of possessing drug paraphernalia and why he had not testified about the conviction on direct examination. After Dunn answered that he "was just answering for recent cases," the following colloquy occurred:
Q. Have you also been convicted of resisting -
THE COURT: All of these are within the last ten years?
[DEFENSE COUNSEL]: Yes, ma'am.
THE COURT: Well, then you should phrase your question that way, shouldn't you?
[DEFENSE COUNSEL]: Yes, ma'am.
THE COURT: I - I can't read your mind and Idon't have a copy of what you're looking at.
[DEFENSE COUNSEL]: Yes, ma'am.
THE COURT: So you should say in the past ten years.
Later, defense counsel asked Dunn, "How many people would you say that you informed on?" The trial court then stated:
THE COURT: I'm sorry sir, but I don't believe that's the proper form of the question. I believe I think the proper form of the question is how many people do you say you made buys from.
[DEFENSE COUNSEL]: Yes, ma'am.
THE COURT: Because inform on would be just giving information and I think the evidence here has been more buys.
[DEFENSE COUNSEL]: Yes, ma'am, your Honor.
Towards the close of his cross-examination, defense counsel attempted to ask Dunn about the details regarding one of the controlled buys on 21 August 2002. The following exchange ensued:
Q. Now when the police report says that at 8:16 you were - I'm sorry, I was looking at the wrong date, withdrawn.
THE COURT: Would that also include withdrawing the question about the person being someone that he had previously bought from?
[DEFENSE COUNSEL]: No, ma'am.
THE COURT: That's on that date?
[DEFENSE COUNSEL]: Yes, ma'am. I was looking at the wrong report, I apologize.
THE COURT: No, no, as long as I can have a clue as to where you are.
. . .
Q. Now earlier you did remember who had dropped you off that day; is that correct? Earlier you testified off -
THE COURT: When you say that day, I'm sure he knows exactly where you are, but you're jumping back and forth and I don't have a clue which day you're talking about.
[DEFENSE COUNSEL]: Yes, ma'am. I'm talking about August 21st.
THE COURT: Every time you're talking about that, work that into the question for me.
Defendant argues the above comments were sarcastic, demeaning, and critical of defense counsel's performance. To support his contention, defendant relies on State v. Brinkley, 159 N.C. App. 446, 448-50, 583 S.E.2d 335, 337-38 (2003), in which this Court held the defendant was entitled to a new trial because the trial court made extraneous comments during defense counsel's cross-examination of two witnesses, suggesting that defense counsel was not trustworthy and was unethical.
Our examination finds the instant record devoid of the circumstances cited in Brinkley where particularly disparaging remarks were made by the trial judge. An examination of these instances reveals that the trial court's actions did not indicate any opinion towards defendant's case nor any negative attitude toward defense counsel as in Brinkley. The record reveals the trial judge's attempt to ensure that the court, the jurors, and opposing counsel were able to follow defense counsel's questions and the testimony of witnesses. Many of the trial judge's questions were for the purpose of obtaining a proper understanding and clarification of somewhat ambiguous questions. See State v.White, 340 N.C. 264, 299, 457 S.E.2d 841, 861, cert. denied, 516 U.S. 994, 133 L. Ed. 2d 436 (1995) (trial court has duty to control the examination of witnesses, for the purposes of conserving the trial court's time and protecting the witness from prolonged, needless, or abusive examination). While the trial court should have chosen its words more carefully and avoided berating defense counsel in the presence of the jury, we find the trial court's remarks to be harmless in light of other overwhelming evidence of defendant's guilt. Defendant has not met his "heavy burden of proving the trial judge's remarks deprived him of a fair trial and caused a prejudicial effect on the outcome." State v. Mack, 161 N.C. App. 595, 600, 589 S.E.2d 168, 172 (2003) (citing State v. Waters, 87 N.C. App. 502, 504, 361 S.E.2d 416, 417 (1987)), disc. rev. denied, 358 N.C. 379, 598 S.E.2d 140 (2004). This assignment of error is overruled.
IV. Sentencing
Defendant argues the trial court should not have assessed him one prior record level point pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(6) (2003), which provides, " (6) If all the elements of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense or offenses were used in determining prior record level, 1 point." The State does not contend all of the elements of the present offense, sale of cocaine, were included in the elements of any prior offense and concedes the trial court erroneously assessed defendant one point under N.C. Gen. Stat. § 15A-1340.14(b)(6). Weagree. This case is remanded for resentencing.
V. Conclusion
As we recently observed in Mack:
The transcript at bar reveals other incidents of inappropriate and sarcastic comments not assigned as error in this case. The trial judge at bar was recently censured by our Supreme Court for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" for derogatory comments during trial. In re: Inquiry of Hill, 357 N.C. 559, 564, 591 S.E.2d 859, ___ (2003). We expressly disapprove and remonstrate the trial judge's inappropriate comments and unprofessional demeanor displayed before the court, litigants, and jury in this criminal trial. Such behavior falls below the standard of professionalism expected of an officer of the court. Defendant has not, however, met his heavy burden of proving the trial judge's remarks deprived him of a fair trial and caused a prejudicial effect on the outcome. State v. Waters, 87 N.C. App. 502, 504, 361 S.E.2d 416, 417 (1987).
161 N.C. App. at 600, 589 S.E.2d at 172. Similarly, defendant failed to show he was deprived of a fair trial. The trial court erred in calculating defendant's prior record level.
No Prejudicial Error at Trial; Sentence Vacated and Remanded for Resentencing.
Judges WYNN and GEER.
Report per Rule 30(e).