MARTIN, Chief Judge.
Defendant was charged with robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. The State's evidence tended to show that at approximately 1:20 a.m. on 22 June 2003, Tyler Singleton (Singleton) stopped at a McDonald's restaurant on the way home from her boyfriend's house. Singleton ordered her food at a drive-through window. Defendant, Travis Atkins, Trina Leavy and Leavy's son were waiting to place their order in the vehicle behind Singleton. Defendant, who according to Atkins was drunk, exited the vehicle and walked up to Singleton's open driver's side window. Defendant hit Singleton in the facewith a silver handgun. Singleton tried to roll up the window, but could not. Defendant again hit Singleton in the face and said, "Give it up, b____." Singleton gave defendant her wallet and defendant ran off. Singleton identified defendant as her assailant in a police photo line-up and in court.
A jury found defendant guilty as charged. The trial court sentenced defendant to consecutive terms of 77 months to 102 months and 29 months to 44 months imprisonment. Defendant appeals.
Defendant assigns error to several remarks made by the trial judge in the presence of the jury. He argues that the trial judge's comments were sarcastic, demeaning, critical of defense counsel's performance and violated his constitutional rights to an impartial trial.
"The judge's duty of impartiality extends to defense counsel. He should refrain from remarks which tend to belittle or humiliate counsel since a jury hearing such remarks may tend to disbelieve evidence adduced in defendant's behalf." State v. Coleman, 65 N.C. App. 23, 29, 308 S.E.2d 742, 746 (1983), cert. denied, 311 N.C. 404, 319 S.E.2d 275 (1984). A totality of the circumstances test is used to determine whether a judge's comments cross into the realm of impermissible opinion. State v. Larrimore, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995). "Unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." Id. (quoting State v. Perry, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950)). A judge's broad discretionary power tosupervise and control the trial "will not be disturbed absent a manifest abuse of discretion." State v. Goldman, 311 N.C. 338, 350, 317 S.E.2d 361, 368 (1984). Whether a trial court's "comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record," and "the burden of showing prejudice" is "upon the defendant." State v. Blackstock, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985).
With this standard of review in mind, we turn our attention to the trial judge's comments in this case and the context in which they were made. During cross-examination of Singleton, defense counsel questioned her about the composite drawing of her assailant. The following exchange occurred:
Q. Okay. To you would it be a fair statement that - now this is just your own subjective opinion. Would it be a fair statement -
THE COURT: Are you going to ask her what her opinion is or are you going to tell her?
[DEFENSE COUNSEL]: I'm going to ask her.
THE COURT: Well ask her is it your opinion so-and-so. That's the way you do a question.
After re-direct examination of Singleton, the following exchange took place:
[PROSECUTOR]: No further questions, Your Honor.
THE COURT: Anything further Mr. Wells?
[DEFENSE COUNSEL]: In response to that question -
THE COURT: Well, I said is there anything further?
In recross-examination, defense counsel asked Singleton whether it would be a fair statement that defendant's hairstyle at trial was "like dreadlocks or dreads." Singleton responded,
A. I guess. I don't know. I don't put dreadlocks in my hair and I don't really know exactly what those are.
[DEFENSE ATTORNEY]: But in any event you do know what cornrows are. They've got - it's like a -
THE COURT: Well, now wait a minute. Are you going to ask her what they are or are you going to tell her what they are?
[DEFENSE ATTORNEY]: I'm allowed to ask leading questions on cross-examination.
THE COURT: Yeah, but ask her what they are. Don't you describe them.
[DEFENSE ATTORNEY]: I'm allowed that, Your Honor, with all due respect.
THE COURT: I said you have to ask her the question. Don't you testify to what they are. Ask her does she know what they are.
[DEFENSE COUNSEL]: Is it not correct -
THE COURT: All right.
[DEFENSE COUNSEL]: - that cornrows consist of rows of hair just like maybe a cornfield would have rows of corn and that they are very distinct lines in between. Is that not a correct statement?
Defendant next cites to cross-examination of Officer Scott Lascallette of the Greenville Police Department. Defense counsel asked Officer Lascallette about the police "be on the lookout" report issued in the early morning hours of 22 June 2003. Reading from the report, Officer Lascallette answered,
A. (As read) "Same occurred around 0128 hours this date at McDonalds, 2116 Southeast Greenville Boulevard. Subject is a black male, six foot, 220 pounds, white shirt, jeans. Subject was driving a smoke blue Chevrolet Cavalier with chrome wheels. There were also two other black males in the vehicle as well. No description, no direction of travel. If located, stop and hold GPD," which stands for Greenville Police Department.
Q. Okay, and so you mentioned the correction - that you transmitted 200 pounds, so it should have been reported as 200?
. . .
Q. And then you transmitted there was a blue Chevrolet Cavalier, but we've since then - I mean since then the Greenville Police Department -
THE COURT: Well do we know what the Greenville Police did, Mr. Wells. Can you ask a question rather than testifying. Ask him did -
[DEFENSE COUNSEL]: May I approach the bench, Your Honor?
THE COURT: No, just go ahead.
[DEFENSE COUNSEL]: Since then, the Greenville Police Department determined - there's no dispute that the vehicle that was used was a Pontiac Sunbird. Is that correct?
During the cross-examination of Travis Atkins, defendant points to the following exchange:
Q. And Monte House is a little taller than you are. That's your testimony?
A. Uh-huh. (indicates affirmatively).
Q. How certain are you of that, that he's taller than you?
A. Pretty certain.
Q. And on June the 22nd of this year, he was a little bit taller than you - than you werethen?
A. Yes, sir.
THE COURT: Has he shrunk? That's been four or five months ago, isn't it? He hasn't changed in size, has he? He hasn't changed has he, Mr. Atkins?
A. No, sir.
THE COURT: All right.
Later, defense counsel questioned Travis Atkins about his suspended sentence for discharging a weapon into occupied property conviction.
Q. And in testifying, are you hoping that you will get some help from the State?
A. No sir.
Q. You're not hoping to get some help from the State? You don't have any guarantee of help -
A. No.
Q. - but you're hoping to get some, aren't you? You'd like to have some help?
A. Yeah, I'd like to have some help, yes, sir.
Q. All right, so it's fair to say you are hoping -
THE COURT: Well, now, Mr. Wells, you're putting words in his mouth. He said he'd like to have some.
Defense counsel then questioned Atkins about pending charges as follows:
Q. And do you have an expired registration -
A. Yes, sir.
Q. And in addition to driving while license revoked, do you have a no operator's license?
A. Yes, sir
THE COURT: That would probably follow. His license were revoked. Go ahead, Mr. Wells. Anything else?
Q. Well are those two separate incidences of no operator's license -
[PROSECUTOR]: Objection.
THE COURT: Mr. Wells, how much more of this are you going into? These are pending charges anyway, aren't they?
[DEFENSE COUNSEL]: Yes, Your Honor, they are pending.
Q. Do you have a resisting public officer pending?
A. Yes, sir.
[DEFENSE COUNSEL]: Thank you. I have no further questions.
Finally, defendant challenges the trial judge's comments during the State's examination of witness Greg Leavy. After the prosecutor established that people were drinking before the assault, the following exchange ensued:
Q. Was Jarian Dupree drinking?
A. Yes, sir.
Q. Was he drunk?
A. Yes, sir.
Q. Were you drunk?
[DEFENSE COUNSEL]: Your Honor, I would ask the questions be put in the proper form.
THE COURT: All right, Mr. Perry, Mr. Wellswants you to put the questions in proper form.
[PROSECUTOR]: Yes, sir.
Defendant also challenges the trial court's remarks outside the presence of the jury as belittling and unfairly biased.
An examination of these instances reveals that the trial court's actions did not indicate any opinion towards the defendant's case or any negative attitude toward defense counsel, but rather revealed the trial judge's attempt to an efficient and controlled trial. Rather than expressing an opinion as to the truthfulness of the witness, the court merely reminded the attorney of the witness' testimony in some of the exchanges. Some comments were for the purpose of obtaining a proper understanding and clarification of somewhat ambiguous questions, while others can be reasonably viewed as an attempt to maintain progress and proper decorum in the trial. See State v. White, 340 N.C. 264, 299, 457 S.E.2d 841, 861, cert. denied, 516 U.S. 994, 133 L. Ed. 2d 436 (1995) (trial court has "duty to control the examination of witnesses, for the purposes of conserving the trial court's time and protecting the witness from prolonged, needless, or abusive examination"). Defendant has pointed to no statement by the trial court which, taken together with other allegedly improper statements or separately, can be said to constitute a prejudicial expression of opinion on an issue of fact or to intimate a position detrimental to defendant's case. Furthermore, the trial court's remarks when the jury was not present were clearly not prejudicial to defendant, since it was not observed by the jury. Thisassignment of error is overruled.
Defendant also contends the trial court committed plain error by failing to instruct the jury on voluntary intoxication. Defendant acknowledges, however, that his trial counsel specifically requested that the trial court not instruct the jury on the defense of voluntary intoxication. The record discloses that when the trial court inquired about a voluntary intoxication instruction during the charge conference, defense counsel expressly objected to the instruction as part of his trial strategy because the defense's theory was that defendant was not the perpetrator. Out of an abundance of caution, the trial judge discussed with defense counsel the evidence of defendant's intoxication and asked defense counsel if he wanted the instruction. Defense counsel again objected to the jury being instructed on voluntary intoxication and the trial court yielded to counsel's request. The record makes clear defendant sought to prevent the trial court from instructing the jury on voluntary intoxication. We will not entertain defendant's complaint that the granting of his request prejudiced him. See State v. Barber, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001), disc. review denied, 355 N.C. 216, 560 S.E.2d 141 (2002) (holding "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review"). Accordingly, the trial court properly instructed the jury.
No error.
Judges McCULLOUGH and CALABRIA concur. Report per Rule 30(e).